101 U.S. 1
 101 U.S. 1
 25 L.Ed. 979
 NATIONAL BANK
v.
UNITED STATES.
 October Term, 1879
 
 ERROR to the Circuit Court of the United States for the Eastern District of Arkansas.
 This is a suit by the United States to recover from the Merchants' National Bank of Little Rock, Ark., $160,000, being ten per cent on $1,600,000 of certain notes of the City of Little Rock, which it was alleged the bank had paid out during the years 1870, 1871, 1872, and 1873. The notes were issued and put in circulation by the city, and used in business and commercial transactions as money. They were printed on bank-note paper in amounts ranking from $1 to $100, and were payable to a person named or to bearer. By an ordinance of the city, and also by an act of the legislature of the State, they were receivable in payment of city taxes and of all dues to the city.
 Sect. 3413 of the Revised Statutes is as follows: 'Every national banking association, State bank, or banker, or association, shall pay a tax of ten per centum on the amount of notes of any town, city, or municipal corporation, paid out by them.'
 There was a verdict in favor of the United States for $2,000; and judgment thereon having been rendered, the bank thereupon sued out this writ of error.
 Mr. B. C. Brown for the plaintiff in error.
 So far as it seeks to impose a tax by the United States upon the circulation or other use of the notes of a State municipal corporation, the statute in question is unconstitutional and invalid.
 The principle to which the plaintiff in error appeals is well settled.
 In our dual government, each—State and Federal—is supreme in its own sphere. Each, in all its departments, may devise and use its own means for the discharge of its duties and the exercise of its powers, without hindrance from the other. Neither may, directly or indirectly, by taxation or otherwise, impede the other in the use of such means. McCullough v. The State of Maryland, 4 Wheat. 316; Weston v. City Council of Charleston, 2 Pet. 449; Dobbins v. Commissioners of Erie County, 16 id. 435; Bank of Commerce v. New York City, 2 Black, 620; Bank Tax Case, 2 Wall. 200; Bradley v. The People, 4 id. 459; The Banks v. The Mayor, 7 id. 16 Bank v. Supervisors, id. 26; The Collector v. Day, 11 id. 113; United States v. Railroad Company, 17 id. 322; Freedman v. Sigel, 10 Blatch. 327; State v. Garton, 32 Ind. 1; Jones v. Keep, 19 Wis. 369; Sayles v. Davis, 22 id. 229; Fifield v. Close, 15 Mich. 505; In the Matter of Georgia, 12 Op. Att-Gen. 282.
 A municipal corporation is a part of the State government, and is protected from Federal taxation to the same extent and in the same manner as the State itself. United States v. Railroad Company, supra.
 This principle cannot be denied, but the United States will contend that it does not relieve the bank from payment of the tax.
 That the tax is laid upon the municipality's notes and evidences of indebtedness, or rather upon it, cannot be denied. In determining whether a tax falls within the prohibition, its effect must be considered, and is decisive. In Railroad Company v. Peniston (18 Wall. 5), the exemption of Federal agencies from State taxation was said to be dependent 'upon the effect of the tax; that is, upon the question whether the tax does, in truth, deprive them of power to serve the government as they were intended to serve it, or does hinder the efficient exercise of their power.' p. 36.
 The effect of the tax in this case is apparent. The tax is more burdensome than any which has ever come before the court for determination. In all former cases, the tax was a single specific one, ending on payment. This is a continuing one, following the city's note wherever it may go, and never ending or ceasing until the city abandons the attempt to exercise its legitimate powers. In ten transfers, the national government absorbs the whole value of all the notes issued by the city. Each taker from the city must consider not only the tax which he must pay, but also that which must be paid by the person who takes it from him; for by each transfer, in exchange for the obligations of the government, or of private persons, or for articles purchased or in payment of debts, the note, whether it be taken at a discount or a premium, or at par, is 'paid out,' within the meaning of the act imposing this tax.
 The case most nearly analogous to this is Weston v. City Council of Charleston, supra. The 'stock' of the United States and these 'notes' are similar in every respect. Each was the evidence of a governmental debt, contracted in the exercise of the borrowing power. It is a mistake to call this a tax upon the bank. The bank may be the paying agent, just as in United States v. Railroad Company, supra. There the railroad company was the paying agent, but the tax, when paid, fell upon Baltimore. In this it falls upon Little Rock. The only material difference between Weston v. City Council of Charleston (supra) and the case at bar is, that there the tax was imposed directly upon the stock, while here the attempt is to arrest the city's notes in their circulation, and prevent their passing from hand to hand, by affixing a tax upon their transfer. The contention by the United States that this is not a tax upon the note is to argue that the national government may do indirectly what it cannot do directly. The argument has been frequently met and answered by this court. In the case last cited it was admitted that the power of the government to borrow money could not be directly opposed; but a distinction was taken, in argument, between direct opposition and those measures which had ultimately the same effect. The distinction was promptly repudiated by the court.
 If this is a tax which affects the notes of the city directly or indirectly, it must be condemned; and that it is such there can be no doubt. For it is the quality of transfer—of passing from hand to hand—which gives their chief value to the notes or evidences of debt which are issued by the United States or the smallest municipality. To say that Congress cannot tax the paper, and yet may destroy the quality which gives it value, is an evasion unworthy of any government.
 As to the power of taxation, the rights and regulations of the national and State governments are strictly correlative. Each, as to the other, possesses the same rights and is bound by the same restraints. If, without the power to tax the notes, Congress may arrest their circulation by imposing a tax upon the act of paying them out, the States may, with the same right, impose a tax upon the act of paying out the national currency, or upon the transfer of national obligations. If the power exists upon one side, it does upon the other, and the States may destroy the value of the notes or other obligations of the national government, just as the United States, in this case, destroyed the value of the notes of Little Rock.
 It is said that the national banks being the creatures of Congress, that body can impose upon them any prohibition, or grant to them any privilege,—enforce the prohibition by any penalty, or affix to the exercise of the privilege any price; that the plaintiff in error, having violated the prohibition, must incur the penalty, or, having exercised the privilege, pay the price. That argument does not affect this case, for the reason that Congress neither imposed a prohibition upon, nor granted a privilege to, national banks, in regard to the matter in question. What it might have done, or could have done, is not for consideration here. The question is, What was done?
 It seems clear that the argument of prohibition or privilege gains nothing from the fact that the plaintiff in error is a national banking association, deriving its powers from the act of Congress. While such associations are named, the tax is not imposed upon them as a distinct class, but is intended to suppress the circulation and transfer of the notes of municipal corporations. If that effort cannot be sustained as to the other corporations and persons named in the act, it must fail as to all, national banks included.
 Penalties are never implied. They must be directly prescribed by clear words, for courts will never find them by implication. The act contains neither prohibition, penalty, nor privilege, and taxation implies neither. Youngblood v. Sexton, cited in Cooley on Taxation, 404; McGuire v. The Commonwealth, 3 Wall. 382; Pervear v. The Commonwealth, 5 id. 475.
 Veazie Bank v. Fenno (8 Wall.) 533), which upheld a statute imposing a similar tax upon the paying out of the notes of a State bank, presents a very different question. It is true, as argued in that case, that the franchise of the Veazie Bank was granted by a statute, but it was granted to private persons and for private purposes. The notes of the bank were issued for mere trading purposes. The notes of Little Rock were the evidences of a debt, contracted for public uses by a branch of the State government; and formed a part of the debt of the State. A tax upon them in any form is a tax upon the government of the State.
 The Solicitor-General, contra, cited Veazie Bank v. Fenno, 8 Wall. 533.
 MR. CHIEF JUSTICE WAITE delivered the opinion of the court.
 
 
 1
 The only question presented is as to the constitutionality of sect. 3413 of the Revised Statutes, the objection being that the tax is virtually laid upon an instrumentality of the State of Arkansas.
 
 
 2
 We think this case comes directly within the principles settled in Veazie Bank v. Fenno (8 Wall. 533), where it was distinctly held that the tax imposed by that section on national and State banks for paying out the notes of individuals or State banks used for circulation was not unconstitutional. The reason is thus stated by Mr. Chief Justice Chase: 'Having thus, in the exercise of undisputed constitutional powers, undertaken to provide a currency for the whole country, it cannot be questioned that Congress may constitutionally secure the benefit of it to the people by appropriate legislation. To this end Congress has denied the quality of legal tender to foreign coins, and has provided by law against the imposition of counterfeit and base coin on the community. To the same end Congress may restrain, by suitable enactments, the circulation as money of any notes not issued under its authority. Without this power, indeed, its attempts to secure a sound and uniform currency for the country must be futile.' p. 549.
 
 
 3
 The tax thus laid is not on the obligation, but on its use in a particular way. As against the United States, a State municipality has no right to put its notes in circulation as money. It may execute its obligations, but cannot, against the will of Congress, make them money. The tax is on the notes paid out, that is, made use of as a circulating medium. Such a use is against the policy of the United States. Therefore the banker who helps to keep up the use by paying them out, that is, employing them as the equivalent of money in discharging his obligations, is taxed for what he does. The taxation was no doubt intended to destroy the use; but that, as has just been seen, Congress had the power to do.
 
 
 4
 Judgment affirmed.