# HOLLISTER, Collector, *v.* ZION'S CO-OPERATIVE MER. CANTILE INSTITUTION.

### IN ERROR TO THE SUPREME COURT OF THE TERRITORY OF UTAH.

# WILLIS, Collector, *v.* BELLEVILLE NAIL COMPANY.

### IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS.

Argued March 5th, 1884.—Decided March 17th, 1884.

*Internal Revenue—State Bank.*

An order by A in favor of B, or bearer, upon C for "five dollars in merchandise at retail," paid out by A and used as circulation, is not a note within the meaning of the act of February 8th, 1875, imposing a tax of ten per cent. on notes used for circulation and paid out by persons, firms, associations other than national banking associations, corporations, State banks, or State banking associations.

These cases were heard together. The question at issue was whether notes to bearer for a given sum payable in merchandise at retail, paid out and used as circulation, were subject to the ten per cent. tax imposed by the statute of February 8th, 1875, 18 Stat. 311. In the case from Utah it appeared that the notes in question were paid out by the defendant in error, and used as circulation. In the case from Illinois it appeared that the notes were used as circulation, but it did not appear that they were paid out by the defendant in error. The principal opinion of the court relates to the Utah case.

*Mr. Solicitor-General* submitted the case for Willis on his brief, and argued the case for Hollister.

*Mr. J. L. Rawlins* and *Mr. Shellabarger* for defendant in each case.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

For the purposes of this case, we must assume that the Zion's Co-operative Mercantile Institution used for circulation and paid out their own obligations in the following form:

" 652.]                     SERIES A.                     [5.

"SALT LAKE CITY, Oct. 6th, 1876.

" Pay David O. Calder or bearer five dollars in merchandise at retail.

" Five.                                                  · Five.

" To H. B. CLAWSON,                          G. H. SNELL.

            *Sup't. Z. C. M. I.*"

The question presented is whether these obligations are "notes" within the meaning of the act of February 8th, 1875, c. 36, sec. 19, 18 Stat. 311, which is in these words:

"That every person, firm, association other than national banking associations, and every corporation, State bank, or State banking association, shall pay a tax of ten per centum on the amount of their own notes used for circulation and paid out by them."

This act was passed as an amendment to the internal revenue laws, and is, therefore, to be construed in connection with those laws. It is also part of the system adopted by Congress to provide a currency for the country, and to restrain the circulation of any notes not issued under its own authority. *Veazie Bank* v. *Fenno*, 8 Wall. 533. The laws on that subject may consequently be resorted to in aid of interpretation.

On the 17th of July, 1862, Congress first authorized the use of stamps as money, and by the same act, ch. 196, sec. 2, 12 Stat. 592, provided that no private corporation, banking association, firm, or individual should make, issue, circulate, or pay any note, check, memorandum, token, or other obligation, for a less sum than one dollar, intended to circulate as money, or to be received or used in lieu of lawful money. It was decided in *United States* v. *Van Auken*, 96 U. S. 366, that obligations payable in goods were not included in the prohibitions of this act, because by fair implication, only obligations for money were affected. The national banking act of February 25th, 1863, c. 58, 12 Stat. 665, was passed at the next session of Congress, which authorized the issue of "notes for circulation."

Sec. 20. These notes were to be executed in such manner as to make them "obligatory promissory notes." Then followed, at the same session, the act of March 3d, 1863, ch. 73, 12 Stat. 709, "to provide ways and means for the support of the government," which required (sec. 7) all banks, associations, corporations, and individuals issuing notes or bills for circulation as currency to pay a duty of one per cent. each half year on the average amount of their circulation over a certain sum, and a duty of five per cent. on all issues of notes or bills in sums representing any fractional part of a dollar.

At the next session, the act of June 30th, 1864, c. 173, sec. 110, 13 Stat. 277, 278, provided for a duty upon the average amount of circulation issued by any bank, association, corporation, company, or person "including as circulation all certified checks, and all notes and other obligations calculated or intended to circulate, or to be used as money." Next came the act of March 3d, 1865, c. 78, sec. 6, 13 Stat. 484, which required every national banking association, State bank, or State banking association, to pay a tax of ten per cent. on the amount of notes of any State bank or State banking association paid out by them, after July 1st, 1866. This act was extended on the 13th of July, 1866, c. 184, sec. 9 (*bis*), 14 Stat. 146, so as to include the notes of persons, as well as of State banks and State banking associations, used for circulation. The acts of 1865 and 1866 were considered and enforced in *Veazie Bank* v. *Fenno*, *supra*. After this came the act of March 26th, 1867, c. 8, sec. 2, 15 Stat. 6, which imposed upon every national banking association, State bank, banker, or association, a tax of ten per cent. on the amount of notes of any town, city, or municipal corporation paid out by them.

All these statutes were re-enacted, without any material change of phraseology, in the Revised Statutes, the act of July 17th, 1862, being now § 3583; that of February 25th, 1863, § 5182; that of June 30th, 1864, § 3408; that of July 13th, 1866, § 3412, and that of March 26th, 1867, § 3413. The effect of the act of February 8th, 1875, now under consideration, was to extend § 3412, which included only banks and banking associations, to all persons, firms, associations, and corporations.

The subject-matter of the tax, to wit, "notes used for circulation paid out by them," remains the same.

From this review of the legislation on the general subject, and the apparently studied use by Congress of words of appropriate signification whenever it was intended to cover anything else than promissory notes, in the commercial sense of that term, we are led to the conclusion that only such notes as are in law negotiable, so as to carry title in their circulation from hand to hand, are the subjects of taxation under the statute. It was, no doubt, the purpose of Congress, in imposing this tax, to provide against competition with the established national currency for circulation as money, but as it was not likely that obligations payable in anything else than money would pass beyond a limited neighborhood, no attention was given to such issues as affecting the volume of the currency, or its circulating value. This was the principle on which the case of *United States* v. *Van Auken* was decided, from which we see no reason to depart.

*The judgment of the Supreme Court of the Territory is, therefore, affirmed.*

*Jonathan C. Willis, Collector, &c.,* v. *Belleville Nail Company.* In error to the Circuit Court of the United States for the Southern District of Illinois. This case presents the same general facts as that of *Hollister* v. *Zion's Co-operative Mercantile Institution,* just decided, save only that it does not appear here that the notes were paid out by the Nail Company.

*Affirmed.*