In the Matter of the Application of JOHN G. JENKINS et al., Stockholders of the First National Bank of Brooklyn, for a Writ of Certiorari, Appellants, *v.* BARZILLAI G. NEFF et al., Constituting the Board of Assessors of the City of Brooklyn, Respondents.

1. TAX — NATIONAL BANK STOCK — VALUATION OF REAL PROPERTY. Under section 24 of the Tax Law (L. 1896, ch. 908) which provides for the deduction from the value of the shares of a national bank "a sum which bears the same proportion to such value as the assessed value of the real property of such bank or banking association bears to the capital stock thereof," the real property of the bank should be taken at its assessed and not at its actual value when deducting its value from that of the gross assets or capital of the bank, although its full value is included when estimating the actual value of the shares; this does not result in double taxation, for the reason that the statute contemplates that a tax shall be imposed on the actual value of the stock, less the assessed value of the real estate.

2. ASSESSMENT OF NATIONAL BANK STOCK NOT VIOLATIVE OF § 5219, U. S. REVISED STATUTES — TRUST COMPANIES. The Tax Law (L. 1896, ch. 908), by permitting certain deductions in the assessment of the capital stock of trust companies organized under the laws of this state, which deductions are not allowed in the assessment of the shares of stock of national banks under section 24, does not violate section 5219 of the Revised Statutes, providing that the shares of national banking associations located within the state shall not be taxed at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens, since trust companies, even under the enlarged powers conferred upon them by the Banking Law (L. 1892, ch. 689, § 156), are not in the legal or commercial sense engaged in the business of banking, and shares of stock therein are not moneyed capital in the hands of individual citizens within the meaning of the Federal statute.

*Matter of Jenkins,* 47 App. Div. 394, affirmed.

(Argued April 17, 1900; decided June 5, 1900.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 9, 1900, affirming an order of Special Term confirming an assessment made by the board of assessors of the city of Brooklyn upon the shares of stock of the First National Bank of that city.

The nature of the proceeding and the facts, so far as mate-rial, are stated in the opinion.

*Seymour D. Thompson* for appellants.   The conclusion of the referee, that, as the board of assessors failed to deduct from the gross assets of the First National Bank the sum of $93,000, the actual value of its real estate, and did deduct only the sum of $50,000, that the remaining $43,000 should be deducted, is proper and should be sustained.   (*People ex rel. v. Barker*, 144 N. Y. 94; *People ex rel. v. Comrs.*, 67 N. Y. 516; *People ex rel. v. Comrs.*, 69 N. Y. 91.)   The assessment upon the shares of the First National Bank was at a greater rate than on other moneyed capital in the hands of individual citizens of the state, namely, in the hands of the trust com-panies of the city of Brooklyn.   (Const. of U. S. art. 6, § 2; *McCullough* v. *Maryland*, 4 Wheat. 316; *Allen* v. *Asses-sors*, 3 Wall. 573; *New York* v. *Weaver*, 100 U. S. 539; *C. S. Bank* v. *Owensboro*, 173 U. S. 636; *People* v. *Comrs.*, 2 Black, 620; *People* v. *Comrs.*, 2 Wall. 200; The trust companies of Brooklyn are banks and use their moneyed capital in the same way as the national banks use theirs, and are in direct competition with the national banks. (*Mercantile Bank* v. *New York*, 121 U. S. 144.)   By the statute law of this state the trust companies have all the powers of banks, except emitting bills, and habitually exercise them.   (L. 1892, ch. 689, § 156; L. 1896, ch. 696, § 3; *Shaw* v. *N. R., etc., Co.*, 5 Gray, 162; *Richards* v. *M., etc., R. Co.*, 44 N. H. 127; *Mercantile Bank* v. *New York*, 121 U. S. 138; *Evansville Bank* v. *Britton*, 105 U. S. 322.)   It is not necessary that the moneyed capital in favor of which the discrimination is made should be invested in bank shares. (*Mercantile Bank* v. *New York*, 121 U. S. 138; *Boyer* v. *Boyer*, 113 U. S. 689; *People* v. *Weaver*, 100 U. S. 539; *Pelton* v. *National Bank*, 101 U. S. 143; *Supervisors* v. *Stanley*, 105 U. S. 305; *Hills* v. *Exchange Bank*, 105 U. S. 319; *Evansville Bank* v. *Britton*, 105 U. S. 322; *Whitbeck* v. *M. Nat. Bank*, 127 U. S. 193.)   The assessment in this

41

case is void, for the reason that the national banks were assessed upon a different principle from that on which the trust companies were assessed. (*Van Allen* v. *Assessors*, 3 Wall. 573.)

*John Whalen, Corporation Counsel* (*William J. Carr*, of counsel), for respondents. The assessment laid on the shares of stock of the First National Bank, in 1897, was made in due conformity with section 24 of the Tax Law. (*People ex rel.* v. *Comrs.*, 69 N. Y. 91; *People ex rel.* v. *Comrs.*, 67 N. Y. 516; 4 Otto, 415; *People ex rel.* v. *Asten*, 100 N. Y. 597; *People ex rel.* v. *Coleman*, 126 N. Y. 433; *People ex rel.* v. *Barker*, 144 N. Y. 94.) The assessment in question is not in violation of section 5219 of the Revised Statutes of the United States. (*C. Banking Co.* v. *New Orleans*, 99 U. S. 97; *Mercantile Bank* v. *New York*, 121 U. S. 138; *Bank of Commerce* v. *Seattle*, 166 U. S. 463; *People* v. *Comrs.*, 4 Wall. 244; *People* v. *Comrs.*, 3 Wall. 573.)

BARTLETT, J. This is a proceeding by certiorari brought by John G. Jenkins and 140 other stockholders of the First National Bank of Brooklyn against the defendants, constituting the board of assessors of the city of Brooklyn, to review and correct an assessment for the year 1897.

There are but two principal questions presented which need be considered.

The first relates to the assessment on the shares of stock under section 24 of the Tax Law. This section provides, among other things, that in making an assessment there shall be deducted from the value of the shares a sum which bears the same proportion to such value as the assessed value of the real estate of such bank or banking association bears to the capital stock thereof.

After the return to the writ herein the case was sent to a referee to take evidence and report to the court with his findings of fact and conclusions of law.

The referee found as a conclusion of law that the board of

assessors failed to deduct from the gross assets or value of the capital of the bank the sum of $93,000, the actual value of its real estate as carried on the books, and deducted only the sum of $50,000 ; that the remaining $43,000 should be deducted, which will reduce the assessment $14.33 a share.

The Special Term disagreed with the referee on this point and held that the assessment as imposed by the defendants was in compliance with the terms of the statute.

The Appellate Division affirmed the Special Term on this point without discussion. The reasoning of the learned judge who wrote the opinion at Special Term is, in substance, that section 12 of the Tax Law requires that the capital stock shall be assessed at its actual value after deducting the assessed value of the real estate ; and section 24 of the same law provides that in assessing shares of bank stock there shall be deducted from the value such a proportionate sum as the assessed value of the real estate bears to the value of the shares.

It is undisputed that the real estate was assessed at $50,000, and that sum was deducted from the actual value of the shares. It is, however, urged that the actual value of the shares was ascertained by putting in the real estate at its full value of $93,000, as carried on the books of the bank. The argument of the appellants' counsel is that this results in a double taxation.

We agree with the court below that such is not the fact. In order to reach the actual value of the shares it was necessary to ascertain the total value of the assets of the bank, and from that was to be deducted the assessed value of the real estate, which was done.

In *People ex rel. Equitable Gas Light Co.* v. *Barker* (144 N. Y. 94) it was held that under the provisions of law governing the taxation of corporations (Chap. 456, Laws of 1887), which required, in order to ascertain the capital subject to taxation, that all the property owned by a corporation, both real and personal, shall be valued, and that from the aggregate the assessed value of the real estate be deducted, in deter-

mining the value of the real estate, the assessors are not bound by the assessed valuation. This does not necessarily show the full value, and the assessors may legally disregard it and estimate the real estate at its actual value, although this exceeds the assessed valuation.

While this was a case reviewing the provisions of law governing the taxation of corporations, yet it involves a principle similar to the one now presented, where a tax is imposed upon the stockholders of a corporation.

In the case cited Chief Judge ANDREWS (at page 100) said: "In case of corporations it may happen that an undervaluation in the assessment of the real estate as such will be corrected in its valuation as part of the capital, and so the undervaluation may be remedied, and the whole property be subjected to taxation at its real value. The fact, therefore, that the assessed value of the relator's real estate was $1,515,400.00, does not necessarily show that it was its full value, nor did it, we think, preclude the commissioners from estimating its value for the purpose of ascertaining the capital subject to taxation at its actual value, although it exceeded the assessed value. The act of the commissioners in undervaluing the real estate in its assessment as such did not estop the public nor relieve them of the duty, in ascertaining the value of the capital, to estimate the real estate at its full value. We are not here concerned with any question of inequality of assessment as between the relator and other taxpayers. We hold that the commissioners could legally disregard the assessed value of the real estate in estimating the value of the capital, and the question of legality is the only point now in question."

The fallacy of the argument of double taxation is very apparent. The bank carried its real estate on the books at a valuation of $93,000; the assessors of Brooklyn have placed it on the rolls at $50,000. Section 24 of the Tax Law provides that a stockholder is entitled to have deducted from the actual value of the stock this assessed value. There is no double taxation for the reason that the Tax Law contemplates that a tax shall be imposed upon the actual value of the stock

less the value of the real estate appearing upon the assessment roll. It is clear that the stockholders have received the benefit of this deduction.

The second question is raised by the contention of the appellants that the assessment upon the shares of stock of the First National Bank of Brooklyn was at a greater rate than on other moneyed capital in the hands of individual citizens of the state, namely, in the hands of the the trust companies of Brooklyn.

We have thus presented the question whether the manner in which trust companies are assessed in this state is in violation of section 5219 of the Revised Statutes of the United States, the material portion of which provides " that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state."

The power of a state to tax a national bank and its stockholders has been considered and construed many times by the Supreme Court of the United States, and it is unnecessary to consider all the cases.

In the *Bank Tax Case* (2 Wall. 200) it was held that a tax laid by a state on banks, based upon a valuation equal to the amount of capital stock paid in or secured to be paid in, is a tax upon the property of the institution, and when that property consists of stock of the Federal government the law imposing the tax is void.

In *Van Allen* v. *Assessors* (70 U. S. [3 Wall.] 573) the question of taxing the shares of national banks came up from the state of New York under a statute held to be defective because it did not contain the limitation in the National Banking Act that the tax should not exceed the rate imposed upon the shares of any of the banks organized under the authority of the state where the association is located. This omission was afterwards remedied by amendment.

The main question decided, however, was whether the state possessed the power to authorize the taxation on the shares of these national banks in the hands of stockholders whose capi-

tal is wholly invested in stocks and bonds of the United States, and it was held that this power was possessed by the state.

The distinction was pointed out between a direct tax imposed on the capital stock of a bank and a tax laid upon the owners of its shares. In the first case the deduction must be allowed, and in the other it is not proper.

In *People* v. *Commissioners* (71 U. S. [4 Wall.] 244), arising in the state of New York, the last question above referred to was again brought up, but not discussed, as it was held to have been disposed of in *Van Allen* v. *Assessors*.

The other point presented was the clause in the forty-first section of the National Bank Act, which provides as follows as to the tax : " But not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state." (Now § 5219, U. S. Revised Statutes.)

Mr. Justice NELSON said in this connection : " It is argued that the assessment upon the shares of the relator is at a greater rate than that of the personal property of individual citizens, upon the ground that allowance was made on account of United States securities held and owned by them, when at the same time the deduction was disallowed to him. The answer is that upon a true construction of this clause of the act, the meaning and intent of the lawmakers were that the rate of taxation of the shares should be the same, or not greater than upon the moneyed capital of the individual citizen, which is subject or liable to taxation ; that is, no greater proportion or percentage of tax, in the valuation of the shares, should be levied than upon other moneyed taxable capital in the hands of the citizens."

The learned judge, further on in the opinion, says : " Another objection taken is that the taxation of the shares of the relator is illegal on account of this deduction, it being a departure from the rate of assessment prescribed in the clause already cited. The answer is that this clause does not refer to the rate of assessments upon insurance companies as a test by which to prevent discrimination against the shares ; that is confined to the rate of assessments upon moneyed capital in

the hands of individual citizens. These institutions are not within the words or the contemplation of Congress; but even if they were, the answer we have already given to the deduction of these securities in the assessment of the property of individual citizens is equally applicable to them. These companies are taxed on their capital, and not on the shareholder, at the same rate as other personal property in the state. There is not much danger to be apprehended of a discriminating tax in their favor, prejudicial to the rights or property of a citizen, and, of course, to the rights of the shareholders in these national banks who stand on the same footing."

In *Mercantile Bank* v. *New York* (121 U. S. 138) the bill was filed by the complainant as a national bank. It sought to restrain the collection of taxes assessed upon its stockholders in respect of their shares therein, on the ground that the taxes to be collected by the defendants were illegal and void under section 5219 of the Revised Statutes of the United States, being at a greater rate than those assessed under the laws of New York upon other moneyed capital in the hands of individual citizens of that state. It was claimed that there were a large number of unlawful exemptions under the laws of the state of New York in violation of the statute, to which reference has been made; among others, trust companies and life insurance companies were named.

Mr. Justice MATTHEWS, in delivering the opinion of the court, said : "It is accordingly contended on behalf of the appellees in the present case, 1st, that the shares of stock in the various companies incorporated by the laws of New York as moneyed or stock corporations, deriving an income or profit from their capital or otherwise, including trust companies, life insurance companies and savings banks, are not moneyed capital in the hands of the individual citizen within the meaning of the act of Congress; 2nd, that if any of them are, then the corporations themselves are taxed under the laws of New York in such a manner and to such an extent that the shares of stock therein are in fact subject to a tax equal to that which is assessed upon shares of national banks; and, 3rd,

that if there are any exceptions they are immaterial in amount and based upon considerations which exclude them from the operation of the rule relative to taxation intended by the act of Congress."

The learned judge, after reviewing a number of authorities in the Supreme Court of the United States and discussing the question generally, said : "It follows as a deduction from these decisions that ' moneyed capital in the hands of individual citizens ' does not necessarily embrace shares of stock held by them in all corporations whose capital is employed, according to their respective corporate powers and privileges, in business carried on for the pecuniary profit of shareholders, although shares in some corporations, according to the nature of their business, may be such moneyed capital. * * * The key to the proper interpretation of the act of Congress is its policy and purpose. The object of the law was to establish a system of national banking institutions in order to provide a uniform and secure currency for the people and to facilitate the operations of the treasury of the United States. * * * It was deemed consistent with these national uses, and otherwise expedient, to grant to the states the authority to tax them within the limits of a rule prescribed by the law. In fixing those limits it became necessary to prohibit the states from imposing such a burden as would prevent the capital of individuals from freely seeking investment in institutions which it was the express object of the law to establish and promote. * * * The business of banking, as defined by law and custom, consists in the issue of notes payable on demand, intended to circulate as money where the banks are banks of issue ; in receiving deposits payable on demand ; in discounting commercial paper ; making loans of money on collateral security ; buying and selling bills of exchange ; negotiating loans and dealing in negotiable securities issued by the government, state and national, and municipal and other corporations. These are the operations in which the capital invested in national banks is employed, and it is the nature of that employment which constitutes it in the eye of this statute

'moneyed capital.' Corporations and individuals carrying on these operations do come into competition with the business of national banks, and capital in the hands of individuals thus employed is what is intended to be described by the act of Congress. That the words of the law must be so limited appears from another consideration ; they do not embrace any moneyed capital in the sense just defined, except that in the hands of individual citizens. This excludes moneyed capital in the hands of corporations, although the business of some corporations may be such as to make the shares therein belonging to individuals moneyed capital in their hands, as in the case of banks."

The opinion takes up the matter of trust companies. After commenting upon certain legislation of the state of New York in respect to them and not material to consider at this time, the court said : " Trust companies, however, in New York, according to the powers conferred upon them by their' charters and habitually exercised, are in no proper sense of the word banking institutions."

After enumerating the general powers of trust companies, the court said : " It is evident, from this enumeration of powers, that trust companies are not banks in the commercial sense of that word, and do not perform the functions of banks in carrying on the exchanges of commerce."

In the case at bar the appellants' counsel contends that, since the decision of the case last cited, the powers of trust companies have been increased by the Banking Law of 1892 (Chap. 689, § 156), as it confers upon them all the powers prescribed by the statute laws of the state of New York to banks created thereunder, except the power to emit bills which circulate as money.

While this statement is unintentionally much broader than the detailed provisions of the statute referred to warrant, yet it is true that trust companies exercise the powers conferred upon individual banks and bankers by section 55 of the Banking Act and subject to its restrictions.

This section fixes the rate of interest to be charged and imposes penalty for violation of its provisions.

It is, however, to be remembered that trust companies are very much limited as to the money they can use for these pur- poses. Their capital must be invested in United States bonds, state or municipal bonds, or first mortgage bonds on improved real estate, and is thereby separated from the surplus and deposits of the company that may be used for the purposes to which reference has been made.

A trust company accepts and executes all trusts of every description committed to it by any person or corporation, or any courts of record, receives the title to real or personal estate on trusts created in accordance with the laws of the state and executes such trusts, acts as agent for corporations in reference to the issuing, registering and transferring certifi- cates of stock and bonds and other evidences of debt, accepts and executes trusts for married women in respect to their separate property, and acts as guardian for the estates of infants.

It is very obvious that trust companies are not in the legal or commercial sense engaged in the business of banking.

A national bank is authorized to issue notes payable on demand intended to circulate as money; and, while compelled to secure its circulation by the deposit of United States securi- ties, it can employ the balance of its capital for business pur- poses, thereby securing a profitable return for its stockholders. A national bank occupies a distinct field of operation as com- pared with a trust company, and enjoys privileges that are not accorded to the latter, which are the source of great profit.

It is also to be borne in mind that the Federal government imposes a tax of ten per cent on the bills issued by state banks, which practically prevents them from competing with national banks in putting out circulation, which is greatly to the advantage of the latter.

In the case of *Owensboro National Bank* v. *Owensboro* (173 U. S. 664) the Supreme Court of the United States referred to section 5219 of the United States Revised Statutes

and held, reviewing some of the former cases, that it is the measure of power of the state to tax national banks, that power being confined to a taxation of the shares of stock in the names of the shareholders and to an assessment of the real estate of the bank.

Mr. Justice WHITE uses this language (page 677): "This question was examined and it was decided that, as the shares of stock in the hands of the shareholders were distinct and different subjects-matter of taxation from the property or rights of the bank, that, therefore, the power conferred by Congress could be exercised so as to tax the shareholders even although the property of the bank was invested in non-taxable bonds of the United States, because the two were distinct and different things. * * * These cases (referring to *Van Allen* v. *The Assessors*, and other cases), interpreting the act of Congress, have never been questioned, and, indeed, form the basis upon which the taxation of the shares of stock in the names of the shareholders allowed by the act of Congress have been made efficacious for the purpose of bringing a vast amount of property within the taxing power of the states which would have been excluded had not the principles which the cases announced been established."

We have not deemed it necessary to consider in detail the various points argued by the appellants. It is sufficient to say that, after an examination of them, we see no reason to disturb the order of the Appellate Division.

The order appealed from should be affirmed, with costs.

PARKER, Ch. J., O'BRIEN, MARTIN, VANN and LANDON, JJ., concur; HAIGHT, J., not voting.

Order affirmed.