STATE v. FRANKLIN COUNTY SAVINGS BANK & TRUST CO.

January Term, 1902.

Present: TAFT, C. J., ROWELL, TYLER, MUNSON, START, WATSON and STAFFORD, JJ.

Opinion filed March 3, 1902.

*Taxation of savings banks and trust companies—Commercial deposits—Historical review of banking legislation— Construction of statutes—Consequences.*

A franchise tax is a tax upon the privilege of doing business under corporate organization, and the amount thereof upon any class of corporations may be determined upon such basis as the legislature adopts.

The defendant is authorized by its charter and the laws of the state to
 receive commercial deposits, and these are included in the term
 "deposits," as used in V. S. 583 and 584, as a basis of taxation.
In the construction of a statute of doubtful meaning only, will the con-
 sequences be considered.

DEBT for taxes under V. S. 555. Plea, *nil debet.* Heard
on an agreed statement of facts at the December Term, 1901,
Caledonia County, *Munson,* J., presiding.    Judgment, *pro
forma,* for the plaintiff.    The defendant excepted.

*Jonathan Ross* for the defendant.

The question for consideration, is the meaning of the
word "deposits" as used in V. S. 582, 583, 584, 4066 to 4131.
Deposits, as spoken of in all these sections, are savings depos-
its, or savings and trust deposits.    Both are spoken of and
treated as being of the same character.    Savings deposits, *ex vi
termini,* mean deposits for saving or investment.

In *Montpelier Savings Bank & Trust Co.* v. *Montpelier,*
73 Vt. 364, this court held that, for the purposes of taxation,
"trust funds" in a savings bank and trust company, stand the
same as ordinary individual deposits; that the intention rather
than the specific language of the statute is to be considered.
Hence it is manifest that these deposits, or deposits and ac-
cumulations, are by these sections withdrawn from general tax-
ation, and subjected to a lower rate of taxation than the gen-
eral property of the state.    Statutes making such withdraw-
als are against the common right, and are to be construed
strictly.    7 Am. & Eng. Ency. Law 708; *Farnsworth* v. *Good-
hue,* 48 Vt. 209.

The charter of the defendant gives it no authority to re-
ceive commercial deposits.    The language used clearly indi-
cates that the deposits authorized are such as are for invest-
ment.    There is no provision looking to any other kind of de-
posits.    No. 220, Acts of 1898, ss. 10, 13, 14.

Nor does the general law extend the powers conferred upon the defendant by its charter, although controlling. V. S. 4128. The words "Trust Company," by V. S. 4106, include Savings Banks, and Savings Banks & Trust Companies, both of which are Savings Institutions within the purview of Chapter 174. So the defendant, so far as the present question goes, is a Savings Institution. It only has individual deposits of two classes: One on which it pays interest, and another consisting of business accounts, popularly called commercial deposits. V. S. 4083 confers power to receive on deposit *for the use and benefit of depositor*s sums of money offered for that purpose. This is the only section of the statute conferring power to receive deposits. They must be for the use and benefit of depositors; or in other words, for investment and accumulation. V. S. 4084-4090 provide for the withdrawal and payment of deposits *with the dividends or interest* credited thereto. In the whole chapter nothing is found alluding to deposits other than those made for investment and entitled to interest or dividends.

If the reasoning of *Montpelier Savings Bank & Trust Co.* v. *Montpelier, supra,* is applied to the solution of this question, but one result can be reached.

In Trust Companies and Savings Banks & Trust Companies, trust funds are, for taxation, treated as deposits. For the purposes of taxation, the deposits of these companies are treated just as are the deposits in Savings Banks and Savings Institutions, and as having the same character. It is not probable they would be taxed alike if they were of a different character. There can be no doubt what is meant by deposits when applied to Savings Banks and Savings Institutions. They consist of moneys left for investment and entitled to interest and dividends. Trust Companies, and Savings Banks & Trust Companies have moneys left with them, as deposits

and in trust, for investment and entitled to interest or dividends. The word "deposits" should be held to mean the same thing in both classes of institutions. The idea of a degree of permanency attaches to them.

It must be manifest that the legislature never intended by Section 583 to open a door by which a taxpayer, having on hand the last of March $1,500 or less, in money, can be exempt from all taxation thereon by leaving it for a few days subject to draft at sight in a Savings Bank & Trust Company. The state would receive in taxes on it in such case only seven-twentieths of one per cent on what it increases the Bank's average deposits of this kind for six months. This is a practical exemption of such sums from taxation and would fill these Banks the last of March with all the ready money in the state, and subject them practically to runs on the Bank after the first of April. It would drain National Banks of all their deposits. It would withdraw from general taxation more than a million of money.

Money on deposit in National Banks, subject to check at sight has to be given in by the depositor, if a taxpayer, for general taxation. V. S. 399 provides that the inventory shall contain an interrogatory calling for a statement of these deposits, and for "deposits in banks other than Savings Banks, Savings Institutions and Trust Companies, and checks and drafts on banks, Savings Institutions and Trust Companies." This requires all checks and drafts on Savings Institutions and Trust Companies to be given in by the taxpayer, in his inventory. This is a clear intimation that deposits spoken of as subject to seven-tenths of one per cent. taxation on the bank are not deposits subject to check or drafts, but deposits made for investment and entitled to interest or dividends. The practice of receiving business accounts subject to check without right to interest or dividend is a recent one.

The right of Savings Banks & Trust Companies to receive business accounts is not open for decision in this case; but whether they have such power has quite a bearing upon what is meant by "deposits" in the sections herein referred to. The fact that this class of Banks have entered upon this line of business, ought to have but little consideration in determining what is meant by deposits. "A corporation possesses only the powers and capacities which are specifically granted by the Act of incorporation, and such as are necessary to carry into effect the powers expressly granted." *Abbey* v. *Billups, 72* Am. Dec. 145. "It may exercise only such powers as are given in plain words or by necessary implication." *Commonwealth* v. *Railroad Co., 67* Am. Dec. 471; *Bank* v. *Snow, 32 Id. 707; Boom Corp.* v. *Sampson, 33 Id. 656; Farewell Co.* v. *Wolf, 65* Am. St. Rep. 22; *Leep* v. *Railway Co., 41 Id.* 109; *Brunswick Co.* v. *Gas Co., 35 Id.* 385; 7 Am. & Eng. Ency. Law 695; 29 Vt. 545; *Willey* v. *Bank, 47* Vt. 546.

*J. E. Cushman* for the State.

From the name "Savings Bank & Trust Company" it would naturally be inferred that the institution possessed at least some of the characteristics of a Savings Bank; but such is not the case. A Savings Bank & Trust Company is nothing but a Trust Company pure and simple. V. S. 4106 provides that the words "Trust Company" wherever used in chapter 174, shall include "Savings Banks & Trust Companies;" so that institutions incorporated under either of these names constitute a class by themselves, and are in legal effect identical. They are treated alike in all the provisions of the statute regulating their functions, management, inspection, powers, duties, liabilities and taxation, unless otherwise provided by their charters granted since the Vermont Statutes took effect. V. S. 4128.

To prevent prolixity in the following discussion, corporations of the one class will hereinafter be designated as Savings Banks and of the other class as Trust Companies.

In behalf of the State it is contended that the term "deposits" in the act in question is used in its *generic* sense; is not by express terms or necessary implication restricted or limited by any statute, legislative act or judicial determination, and means what the term implies as usually used in connection with banking transactions. It should be literally construed unless something can be discovered to clearly show that the legislature intended its meaning to be restricted. *Provident Institution* v. *Mass.* 6 Wall. 611; *In re Society, Id.* 595; *Bank* v. *Collector,* 3 *Id.* 514; *Bank* v. *Archibold,* 104 U. S. 708; *In re Bank,* 149 Mass. 1; *Corte* v. *Society,* 32 Conn. 173.

The provisions of law touching the amount upon which the tax is to be computed are certain and specific, including no phrases or combination of words about which there is any doubt regarding their accepted meaning; and can be literally construed without doing violence in the slightest degree to any part of the act in question or the general law regulating the taxation of individuals.

The general law exempts individual depositors, who file their inventories, from taxation on deposits in Savings Banks and Trust Companies, to the amount of $1,500. V. S. 399. The treasurers of such institutions are required to report to the listers all individual deposits in excess of that sum. V. S. 375, 376. There is nowhere any suggestion that deposits in Savings Banks & Trust Companies not exceeding the limit specified are to be set in the grand list; but on the contrary, whenever such deposits are mentioned, the statute plainly exempts them from general taxation. V. S. 399.

The individual taxpayer is exempt from, and the bank liable to taxation to the amount of each individual deposit not

exceeding $1,500; and the bank is exempt from, and the tax-payer liable to taxation for all excess of that sum. To fully establish the foregoing apportionment, it is provided that V. S. 445 shall not apply to the taxation of deposits otherwise taxed by the laws of the state. *Colton* v. *Montpelier,* 71 Vt. 413.

Applying the well-known rule of construction, that taxation is the rule and exemption from taxation the exception, and that statutes creating exemptions from taxation should be strictly construed and not enlarged beyond their terms, it would seem to be fully demonstrated that our laws governing the taxation of deposits in Savings Banks & Trust Companies are in perfect accord; the liability of the Bank to taxation thereon ceasing at the point where the liability of the depositor begins, and *vice versa.*

No provision is contained in Vermont Statutes limiting or designating the amount and kind of deposits that Trust Companies can receive. See *Bank* v. *Trust Co.,* 105 Fed. 491. Both classes of deposits received by the defendant are upon "such terms as are agreed upon" between the defendant and its depositors. The commercial deposits are received under an express or implied contract to allow the depositor to draw against his account without previous notice, by check payable at sight.

Should it be claimed that the construction of this statute asked for by the State would lead individuals to make commercial deposits just before the first of April and soon after withdraw them, for the purpose of avoiding taxation, it is answered that the same opportunity now exists to make such deposits with a Savings Bank and in the savings department of a Trust Company. In either case the taxpayers action would be unlawful. V. S. 402.

WATSON, J.   The defendant is a corporation with capital stock, organized under a special charter, Laws of 1898, No. 220.

The corporation has the power, among other things, "To receive moneys on deposit or in trust at such rate of interest or on such terms as may be agreed upon, the rate of interest to be allowed for the deposit not to exceed the legal rate."

The defendant keeps deposits for savings and investment, for which it issues books of deposit containing certain rules and regulations touching such deposits.   In addition thereto it keeps with business men commercial deposits, which are strictly business accounts, such as are kept by national banks.   Such deposits are subject to be withdrawn at sight, and the depositor receives no interest thereon.   Usually the defendant gives the depositor a pass book on which it enters the credit and debit sides of the account, and no more; and it usually renders him a monthly statement of his account, accompanied by the checks drawn against it during the month.

Every savings bank and trust company incorporated in this state and doing business herein is required to pay a tax to the state under the provisions of V. S. 583 and 584, as amended by Laws of 1896, No. 18, section 2.   The law reads:

"Sec. 583.   Every trust company or savings bank and trust company incorporated by this state, and doing business herein, shall pay a tax to the state treasurer, which is hereby assessed at the rate of seven-tenths of one per cent annually, upon the average amount of its deposits, including money or securities received as trustee under order of court or otherwise, deducting therefrom the average amount, not exceeding ten per cent of its assets, invested in United States government bonds, and, also, the amount, if any, of individual deposits in excess of fifteen hundred dollars each, listed to the depositors in towns of this state where such depositors reside.

Sec. 584.   The taxes assessed by the two preceding sections shall be paid semi-annually, one-half in the month of February and one-half in the month of August, and shall be based upon the returns for the six months terminating with the last day of December and June next preceding.   No other tax shall be assessed upon such deposits or accumulations in savings banks, or on such deposits in trust companies, and savings banks and trust companies, nor against the depositors on account thereof, except individual deposits exceeding in the aggregate fifteen hundred dollars."

The defendant made due return of the average amount of all its deposits for the six months ending the last day of June, 1901.   This return includes $42,308.24 as the average amount of commercial deposits.   The defendant has paid the tax assessed on all its deposits, except the commercial, which it claims are taxable to the depositors.   The tax on such deposits, with interest, is $151.40, and to collect the same this suit is brought.

That the tax required to be paid by sections 583 and 584 is a franchise tax, was decided in the case of *State* v. *Bradford Savings Bank and Trust Co.*, 71 Vt. 234, 44 Atl. 349.

Such a tax is upon the privilege of conducting the business under a corporate organization.   Cooley on Taxation, 34.

The amount to be paid on franchises of any class may be ascertained upon such basis as the legislature shall determine; but it was said by the Federal Supreme Court in *Society for Savings* v. *Coite*, 6 Wall. 594, speaking through Mr. Justice Clifford, that experience shows that to ascertain the amount in some mode by the amount of business which the corporation shall transact within a specified period, is better calculated to effect justice among corporations required to contribute to the public burdens, than any other which has been devised.

It is contended in behalf of the defendant that its powers are so limited by the charter and the general statutory provisions applicable to savings banks and trust companies, that it is not authorized to receive commercial deposits, and therefore the word *deposit* as used in the provision of the charter before quoted does not have reference to such deposits, but refers solely to deposits for savings or such as are interest bearing; and that the word "deposits" as used in sections 583 and 584, does not include commercial deposits as a basis for taxation. In effect this is a contention by the defendant that its deposits, to the extent of over forty-two thousand dollars, pertain to and are the result of a business *ultra vires* the corporation, and therefore not a basis for such taxation within the law. If this contention were sound, the question whether the defendant could take advantage of its own wrong thus to avoid taxation might properly arise.

But we do not think the defendant's powers are thus limited. Under the provisions of the charter, the rate of interest and the terms on which the defendant may agree to receive moneys on deposit or in trust, are within its discretion, except that the rate of interest allowed on deposits shall not exceed the legal rate. The language used is broad enough to permit the receipt of money on deposit upon terms as to interest from the legal rate down to without interest; and upon such terms regarding payment as the parties may expressly or impliedly agree. The interest may be at a special rate, and the deposit subject to drafts or checks drawn against it payable at sight; or the deposit may be without interest, and payable in drafts or checks in the same way. In fact, generally, when a bank receives ordinary deposits, it impliedly contracts with the depositor to discharge the indebtedness by honoring such checks as he may draw against it. *Janin* v. *London etc. Bank*, 92 Cal. 14, 27

Am. St. Rep. 82; *Phoenix Bank* v. *Risley,* 111 U. S. 125, 4 Sup. Ct. 322, 28 L. Ed. 374.

Mr. Morse defines a bank as "an institution, usually incorporated, with power to issue its promissory notes intended to circulate as money (known as bank notes); or to receive the money of others on general deposit, to form a joint fund that shall be used by the institution for its own benefit, for one or more of the purposes of making temporary loans and discounts, of dealing in notes, foreign and domestic bills of exchange, coin, bullion, credits, and the remission of money; or with both these powers, and with the privileges, in addition to these basic powers, of receiving special deposits, and making collections for the holders of negotiable paper, if the institution sees fit to engage in such business. * * * Generally the bank must hold itself ready at any time to pay the amount of a deposit to the depositor or his order, but this may be varied by agreement (as to give one or more days' notice, or not to draw for a certain time, or to leave always a certain sum to the depositor's credit), and is not an essential to the definition." 1 Morse on Banking, s. 2. See also Bouvier's Dictionary, and *Oulton* v. *Savings Institution,* 17 Wall. 109, 21 L. Ed. 618.

By its charter, the defendant may receive deposits; may issue letters of credit; purchase and sell stocks, bonds, mortgages and other evidences of indebtedness; and in section 16, the right to discount bills of exchange, business and commercial paper, is expressly recognized. In addition thereto, are the other powers explicitly granted by the charter and by the general statutory laws applicable to such institutions, and its implied powers.

Under the provisions of V. S. chapter 173, banks of circulation, discount and deposit may be organized. Therein it is provided that all banking associations organized thereunder, shall be banks of discount and deposit, as well as circulation,

and may carry on the business of banking by discounting bills, notes and other evidences of debt, receiving deposits, buying and selling gold and silver bullion, foreign coin, and bills of exchange, loaning money on real and personal security, and exercise such incidental powers as are necessary to carry on such business.

It will be noted that, as a bank of discount and deposit, its express powers are included within the powers of the defendant under its charter and the general statutory provisions, except in buying and selling gold and silver bullion, foreign coin, and bills of exchange, which exceptions are not essential to the character of the bank.

It is a matter of history, of which the court will take judicial notice, that prior to the passage of the National Banking Act in February, 1863, banks of circulation, discount, and deposit, organized under the laws of this State, were here engaged in the business of banking; that savings banks were first chartered in this State in 1847, of which seventeen had been chartered before the passage of the National Banking Law, and that such savings banks were organized and engaged in business within the powers of their grants, concurrently in time with the state banks of circulation, discount, and deposit for fifteen years before the initiation of the national banking system; that within a few years, at longest, after the passage of the National Banking Law, such last named state banks went out of existence, and concurrently therewith special charters were granted to trust companies or savings banks and trust companies, one being granted in 1868, twelve in 1869, and seventeen in 1870.   From the first one granted in 1868 as a trust company to the present time, whether trust companies or savings banks and trust companies, by name, the basic powers granted have been the same and nearly identical in

terms with those in the defendant's charter, which, as before seen, includes nearly all the basic powers of a state bank of circulation, discount, and deposit, save that of issuing notes of circulation,—a distinctive and fundamental feature of national banks.

Nor was this without manifest reasons on the part of the law makers of the state. In March, 1863, congress passed an act requiring all banks, associations, corporations, and individuals issuing notes or bills for circulation as currency, to pay a tax thereon of one per cent semi-annually on the average amount of circulation exceeding a specified sum, and five per cent on the issue of notes or bills as fractional currency. By an act of 1865, national banking associations, state banks, and state banking associations were required to pay a tax of ten per cent on the amount of notes of state banks and state banking associations paid out by them after July 1, 1866; and by an act passed in 1875, state banks and state banking associations were required to pay a tax of ten per cent on the amount of their own notes used for circulation and paid out by them. In *Hollister* v. *Mercantile Institution*, 111 U. S. 62, 4 Sup. Ct. 263, 28 L. Ed. 352, after reviewing the different acts of congress in this behalf, the Court, speaking through Mr. Chief Justice Waite, said: "It was, no doubt, the purpose of congress, in imposing this tax, to provide against competition with the established national currency for circulation as money." See also *Merchants' National Bank* v. *United States*, 101 U. S. 1, 25 L. Ed. 979, and *Veazie Bank* v. *Fenno*, 8 Wall. 533, 19 L. Ed. 482.

Under such taxation, state banks of circulation ceased to exist in this State, as they undoubtedly did in others. In *Jenkins* v. *Neff*, 163 N. Y. 320, 57 N. E. 408, it is said: "It is also to be borne in mind that the Federal government imposes a tax of ten per cent on the bills issued by state

banks, which practically prevents them from competing with national banks in putting out circulation, which is greatly to the advantage of the latter."

This historical review shows that banking institutions like the defendant came into existence as successors to the state banks of circulation, discount and deposit, rather than as off-shoots from savings banks as argued for the defendant.

The character of a bank is to be determined by the business which it is empowered to do rather than by its name. A savings bank is an association without capital stock. The depositors constitute the bank, and their general relation thereto is like that of stockholders in banking associations having capital stock. They are the owners of the funds of the bank, share in its profits and losses *pro rata,* and in winding up the business, each depositor takes his share of the assets remaining after the payment of the debts. Such a bank is solely for the purpose of mutual savings, and its powers are very limited. At most it is a bank of deposit only, and the money deposited is for the use and benefit of the depositors. V. S. 4083.

In the light of the authorities there can be no doubt that the defendant is a bank of discount and deposit. 1 Morse on Banks, s. 50; *Bank for Savings* v. *Collector,* 3 Wall. 495; *National Bank* v. *Johnson,* 104 U. S. 271.

Clearly, the receiving of commercial deposits, as well as deposits for savings and investment, is within the defendant's corporate powers. The money received goes into the general funds of the bank, and the relation of debtor and creditor is created alike in both classes. The fact that one class is interest bearing and the other not, also the difference in time and method of payment, are because of the different terms upon which the moneys were received. In nature they are both general deposits.

The law regarding the basis of the tax of seven-tenths of one per cent required to be paid annually by such a bank, is very explicit in terms. It specifies that the tax shall be "upon the average amount of its deposits including money or securities received as trustee under order of court or otherwise," with certain specified deductions therefrom. We discover nothing in any of the provisions of the law indicating that any particular class of general deposits was intended to be excluded therefrom. There is no ambiguity in the law in this regard. In *Perkins* v. *Cummings,* 66 Vt. 485, 29 Atl. 675, it is said that, "where a statute is plain and unambiguous, courts cannot supply supposed omissions nor correct supposed mistakes, but must administer it as the legislature has made it."

The *Society for Savings* v. *Coite, supra,* arose under the laws of Connecticut by which a tax equal to three-fourths of one per cent on the total deposits in such banks should be paid annually to the State, and that the tax should be in lieu of all other taxes. The bank had invested over $500,000 of its deposits in securities of the United States which were exempt from taxation by state authority. The bank contended that the amount of its deposits thus invested should not have been included in the deposits taken as a basis for fixing the amount of the tax to be paid, and refused to pay so much of the tax as was equal to the prescribed percentage thereon. The court said: "Neither investment nor the value of the deposits being mentioned in the provisions, it seems clear that they are unimportant in this investigation, as the amount of the tax is the same whether the deposits, on the day named, have or have not been invested, and whether they are above the par value or of no value at all. Moneys received constitute deposits in the sense in which the word is used in that provision, and the total amount of such deposits on that day furnishes the true basis of

computation, wholly irrespective of their market value or of the disposition made of the funds by the defendants."

In *Provident Institution* v. *Massachusetts,* 6 Wall. 594, a statute of Massachusetts under consideration provided that every institution for savings incorporated under the laws of that State should pay a tax of one-half of one per cent per annum on the amount of its deposits to be assessed one-half on the average amount of its deposits for the six months preceding the first day of June, and the other half on the average amount of its deposits for the six months preceding the first day of November. The institution had over a million dollars of its deposits invested in non-taxable securities and declined to pay the tax based thereon. The court said: " 'Deposits' as the word is employed in that section are the sums received by the institution from depositors without regard to the nature of the funds. They are not capital stock in any sense, nor are they even 'invesments,' as the word is there used, which simply means the sums received, wholly irrespective of the disposition made of the same or their market value." In *State* v. *Bradford Savings Bank and Trust Co., supra,* the statute now under consideration was involved. It was there said that the amount of the deposits shows the indebtedness to the depositors, and does not necessarily bear any relation to the actual value of the bank's taxable property; and that the amount of the tax is determined solely by the extent of the business done by the corporation, as measured by the average amount of its deposits for the time for which the tax is assessed, after making the deductions specified.

We think the law is there properly stated, and that it makes no difference for the purposes of taxation whether the deposits are commercial or of the general class on interest.

It is argued on behalf of the defendant that such a construction will enable taxpayers in the State to avoid general tax-

ation by depositing in such banks any sum not exceeding fifteen hundred dollars just before the first day of April each year and withdrawing the same soon thereafter, and therefore that it is not in accordance with the general policy of the State regarding taxation. At first, such an argument seems to be of much force, but it weakens as we consider it. Assuming that taxes may be evaded in that way, why may they not be evaded if the deposit is made on interest *in form,* as well as when made without interest? The difficulty in making a deposit in the one case more than in the other with such a purpose is not apparent. Moreover, it would seem from the case of *Shotwell* v. *Moore,* 129 U. S. 590, that, if the deposit be made in either way to avoid taxation, the question might be made whether the money thus deposited was not still taxable to the depositor.

It is urged that it is the policy of the State that all property therein be subjected to general taxation. It can with equal force be said that it is the policy of the State that a tax for the payment of state expenses shall be assessed upon the property, business, or corporate franchises of corporations, including savings banks, savings institutions, and trust companies. The greater the sum of individual deposits up to fifteen hundred dollars, of depositors residing in the State, and without limit of depositors residing out of the State, the greater will be the tax received by the State for the payment of state expenses.

In no other way would the State realize a benefit from taxation on deposits of depositors residing out of the State; for they are not here subject to general taxation. The *situs* of a debt for the purpose of taxation,—with some exceptions which do not here apply,—is at the domicile of the creditor. *Bullock* v. *Guilford,* 59 Vt. 516, 9 Atl. 360; *Liverpool etc. Ins. Co.* v. *Board of Assessors,* 51 La. Ann. 1028, 72 Am. St. Rep. 483.

In *Hadden* v. *Barney*, 5 Wall. 107, in discussing public policy other than what appears from the law touching the subject under consideration or having a bearing thereon, the Court, speaking through Mr. Justice Field, said: "What is termed the policy of the government with reference to any particular legislation is generally a very uncertain thing, upon which all sorts of opinions, each .varient from the 'other, may be formed by different persons. It is a ground much too unstable upon which to rest the judgment of the Court in the interpretation of statutes." And in *St. Paul, M. & M. R. Co.* v. *Phelps,* 137 U. S. 528, it is said that, where a statute is clear and free from ambiguities, the letter of it is not to be disregarded in favor of a mere presumption as to what is termed the policy of the government.

It is a principle of construction that if the meaning of a statute is doubtful, the consequences are to be considered in its construction; but, where the meaning is plain no consequences are to be regarded in the construction for that would be assuming legislative authority. 9 Bac. Abr. 255.

*The pro forma judgment affirmed.*