STATE v. CLEMENT NATIONAL BANK.

May Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed January 16, 1911.

*State Taxation—Property Subject to—National Banks—State*
*Regulation—Bank's Voluntary Agreement to Pay Tax—*
*Bank as State's Agent for Collection—"Franchise Tax"—*
*"Deposits"—Credits—Situs—"Assessment"—Power of Leg-*
*islature—Income Bearing Securities—Value—Apportionment*
*of Tax—Statutes—P. S. 804-820—Construction—"Every*
*Person"—Constitutional Law—Validity of Statutes—Pre-*
*sumptions—Due Process of Law—Obligation of Contracts*
*—Impairment—Corporations—Ultra Vires.*

The State's taxing power extends to all persons and property within its
   jurisdiction, not protected therefrom by Federal supremacy.
National banks are instrumentalities of the Federal government, and as
   such are necessarily under the paramount authority of the United
   States.
There can be no State taxation of a National bank without the consent of
   Congress.
There can be no State taxation of a National bank except on its real estate,
   and on its shares of stock as the property of its stockholders; and this
   does not authorize State taxation of the bank's franchise in lieu of the
   taxation of its shares.
A "franchise tax" is a tax on the privilege of doing business under corporate
   organization.
The tax of seven-tenths of one per cent, imposed by P. S. 744, 745, on the
   average deposits of savings banks and trust companies, is a franchise
   tax.
The clause of the Fourteenth Amendment of the Federal Constitution,
   which secures to all the equal protection of the laws, does not preclude
   a classification of property for State taxation, but requires that such
   classification be based on a distinction that bears a just relation to the
   purpose of the enactment.

Money deposited in a bank without special arrangement becomes the bank's property, and the depositor becomes a creditor of the bank to the amount of the deposit.

The term "deposit" may denote either the money deposited in a bank, or the credit that the depositor receives for the money.

P. S. 804-820, taxing interest bearing deposits in National banks, does not tax the money deposited, but the credit that the depositor receives, and, hence, does not impose a franchise tax.

The capital stock of a National bank is the sum on which it is authorized to do business, and does not include its general deposits, as they are only loans to the bank, conferring on the depositor a mere chose in action.

Though the capital stock of a National bank is taxed by the State to the individual holders by permission of Congress, and could not be so taxed without that permission, there is no provision of the Federal law that deprives the State of the power to tax deposits in a National bank to the depositors.

Where an ordinary loan is made, the property thereby transferred to the borrower and the resulting debt to the lender are separate and distinct interests, each subject to taxation; and, hence, the fact that a National bank is protected by the doctrine of Federal supremacy from State taxation of deposits has no bearing on the State's right to tax the depositors.

The word "assessment", as applied to taxation, ordinarily implies an official listing of persons and property to be taxed, and a valuation of the property of each person as a basis of apportionment, usually done by officers specially appointed for that purpose; but, in case of taxes laid on solvent securities, the nominal or face value of which is identical with the actual value, the assessment may be made by the Legislature without the intervention of the assessing officers.

The owner of an interest-bearing deposit in a National bank cannot object to the assessment of his resulting credit at its full amount because of the possibility that the bank may prove insolvent.

A taxpayer's invested funds cannot be valued for taxation solely according to the rate of interest they bear.

The Federal Constitution does not confine a state to one system of taxation, but the state may adopt different systems adjusted with reference to the valuation of different kinds of property, and the method of collection may be varied to suit the necessities of the case.

Equality of operation, as applied to taxation, does not mean indiscriminate operation on persons merely as such, but on persons according to their relation; hence, diversity of method of taxation, in respect of the amount imposed and the species of property selected for taxation or exemption, is not inconsistent with perfect uniformity and "equality" of taxation.

There is nothing in the Federal Constitution which requires that State taxation be equal, uniform, or just.

P. S. 804-820, taxing interest-bearing National bank deposits to the depositors, does not violate any provisions either of our State Constitution or of the Federal Constitution, as isolating depositors in National banks and discriminating against them by requiring them to pay a tax on a particular class of debts, assessed at a different rate, and charged and paid at different times and according to different methods, than taxes imposed on other taxpayers in respect of other credits; nor does it discriminate against bank depositors whose deposits do not bear interest, by leaving such deposits subject to taxation at the full local rate.

Nor is P. S. 804-820 unconstitutional because its effect is to withdraw from local taxation personal property of great value, resulting in discrimination against the taxpayers having credits other than National bank deposits, by diminishing the grand list and thus raising the rate of local taxation, the average of which is more than the rate imposed on such deposits.

P. S. 804-820, taxing interest-bearing deposits in National banks, is not unconstitutional as discriminating against such banks in that all their interest-bearing deposits are taxed to the depositors, while of deposits in saving institutions only the amount exceeding $2,000 is so taxed, for the owners of deposits in National banks are required to pay a single tax at a designated rate that is less than the average rate of the taxes imposed under the general law, and so those more heavily taxed under the general law may properly be allowed a reduction denied those taking advantage of the special act; and, besides, National banks and savings institutions differ in their purpose, in the scope of their business, and in their permitted modes of operation, and so are not in the same class.

A statutory provision not objectionable on its face may be adjudged unconstitutional because of its effect in operation; the intent of the Legislature being considered in some cases in determining the question.

Property may be constitutionally taken through tax proceedings without the notice required in exercising the right of eminent domain; for such proceedings are within the requirement of due process of law if the taxpayer has an opportunity to contest the validity of the assessment or the amount of the tax in proceedings for its collection.

Since P. S. 804-820, taxing interest-bearing National bank deposits, requires the depositor to make a return showing the amount of such credits, and provides for the collection of the tax by a suit in court, it by implication requires notice and gives a right to contest the validity of the tax, and so is not unconstitutional as depriving the taxpayer of his property without due process of law.

Since P. S. 804-820, taxing interest-bearing deposits in National banks, provides for the payment of the tax by the bank only in case the bank elects to do so, and in that case authorizes a deduction of the tax from the depositors' credits only on the basis of a correct apportionment, the statute is not unconstitutional as depriving the bank's depositors and

stockholders of their property without due process of law for that in the apportionment of the tax among the depositors some loss may fall on the bank.

Speaking generally, all property within the jurisdiction of the State is held subject to its right to impose new taxes, or to increase the rate or change the method of taxation; and all contracts are made with reference· to the State's taxing power, and in subordination to it.

P. S. 804-820, taxing interest-bearing deposits in National banks, is not unconstitutional as impairing the bank's obligations to its depositors in that the statute allows the bank to settle its three per cent obligations. to its depositors by paying seven-tenths of one per cent to the State, and two and three-tenths per cent to the depositor.

A statute cannot impair the obligation of a contract unless it acts on the contract itself as distinguished from the property that is the subject of the contract.

The rule that a state can exercise no control over a National bank, except as Congress may permit, exempts the bank only from such state legis-lation as tends to impair the bank's utility as an instrumentality of the Federal government.

P. S. 804-820, taxing interest-bearing deposits in National banks, is not in conflict with the provision of our State Constitution requiring from every member of society a proportional contribution toward the ex-penses of government, as that provision only requires governmental expenses to be apportioned equally, not that exactions levied on prop-erty shall be equal, and so does not restrict the State to methods of taxation that operate equally on all its inhabitants regardless of the variety and extent of the advantages derived from its protection and regulation.

The provision made by P. S. 804-820 for taxing interest-bearing deposits in National banks is valid, and the State's waiver of all proceedings thereunder is a sufficient consideration for a bank's stipulation to pay the tax for the account of the depositors, in accordance with the pro-visions of the statute.

Where a tax on deposits in a National bank has been assessed against the depositors the State may make the bank its agent to collect the tax.

Where, in accordance with the provisions of P. S. 804-820, taxing interest-bearing deposits in National banks to the depositors, a bank voluntarily elected to pay the tax itself and charge the same to its depositors, knowing that, because of withdrawals and deposits made after the dates on which the assessments were required, it would not be able fully to recoup itself for the tax so paid, it is not entitled to object to the tax on the ground that because of its inability so to recoup itself the tax is, in effect, a franchise tax, which the State has no power to levy.

P. S. 804-820, taxing interest-bearing deposits in National banks to the depositors, does not require, in case the bank stipulates to pay the tax and charge the same to its depositors, that such tax shall be appor-

tioned among the individual depositors, but only that the appropriate amount of the tax shall be charged against their deposits, and so the statute is not objectionable as authorizing the taking of the property of one person to pay the tax of another.

A corporation has no powers other than those conferred on it by the sovereignty that created it, and the enumeration of certain powers excludes others not fairly incidental to those designated; yet whatever may be regarded as incidental to the object for which the corporation is created is not to be taken as prohibited.

A corporation can make no contracts other than those authorized by its charter, but an undertaking that may fairly be regarded as incidental to, or consequent on, what the Legislature has authorized, ought not, unless expressly prohibited, to be held *ultra vires.*

The contract of a National bank, voluntarily made, under the provisions of P. S. 804-820, to pay to the State the tax assessed against the bank's depositors on their interest-bearing deposits, is a contract designed to promote the bank's interests in an authorized branch of its business, and is not *ultra vires.* ·

Tangible personal property has no independent situs, but follows that of its owner, and can be taxed only where the owner resides; hence the State has no right to tax the credit to which a non-resident owner of a local interest-bearing bank deposit is entitled.

A statute must, if possible, be given a construction that will make it consistent with the Constitution.

Every presumption is to be made in favor of the constitutionality of a statute, and the presumption of validity continues until the contrary is shown beyond a reasonable doubt.

Since the State has no right to tax the credit to which a non-resident owner of a local interest-bearing bank deposit is entitled, the words "every person", as used in P. S. 809, providing that "every person so having a deposit in a National bank" shall pay the State a designated tax thereon, should be construed to mean "every resident of this State" having such a deposit, and so construed the statute is valid.

SPECIAL ASSUMPSIT. Plea, the general issue. Trial by court on an agreed statement of facts, at the March Term, 1910, Rutland County, *Hall,* J., presiding. Judgment, *pro forma,* for the plaintiff. The defendant excepted. The opinion fully states the case.

*O. M. Barber, M. C. Webber,* and *R. E. Healey* for the defendant.

There has been no actual or legal assessment of the tax

sought to be collected in this suit, and for that reason alone, the defendant is not bound by the stipulation. 27 Am. & Eng. Enc. (2d Ed.) 660; Cooley's Const. Limit. 259; *Com.* v. *Del. etc. Co.,* 123 Pa. 394; *Com.* v. *Lehigh etc. Co.,* 104 Pa. 89. The assessment must be made by proper officers and cannot be made by the Legislature. 1 Cooley on Taxation, 600; *People* v. *Hastings,* 29 Cal. 449; 1 Cooley 753.

The tax the bank is required to pay is in effect a tax upon the franchise of a National bank, based upon the average of deposits of the class created, and the act is therefore invalid. Gray on Limit. of Taxing Power, pp. 43-4, §56; *Soc. for Sav.* v. *Coite,* 6 Wall. 594; *Provid. Inst.* v. *Mass.,* 6 Wall. 611; *Com.* v. *Peoples Bank,* 5 Allen 428; *Com.* v. *Lancaster Sav. Bank,* 123 Mass. 493; *Jones* v. *Winthrop Sav. Bank,* 66 Me. 242; *State* v. *Bradford Sav. Bank,* 71 Vt. 234.

The individual deposits became the property of the bank. *Manhattan Co.* v. *Blake,* 148 U. S. 412. They are assessable to the depositors only as debts owing from the bank. *People* v. *National Bank,* 123 Cal. 53; *County of Yuba* v. *Adams,* 7 Cal. 35. The result is, that the tax is one upon the franchise of the bank, and becomes a subsisting debt only when the return is, or by law should be, made. *Com.* v. *Peoples Five Cents Savings Bank,* 5 Allen 428; *City of New Orleans* v. *Houston etc. Co.,* 119 U. S. 256; *State* v. *Franklin Co. Sav. Bank,* 74 Vt. 246; *Hawley* v. *Hurd,* 72 Vt. 122; *Osborn* v. *Bank,* 9 Wheat. 738; *McCullough* v. *Maryland,* 4 Wheat. 316; *Bank* v. *Dearing,* 91 U. S. 29.

The statute is unconstitutional because it taxes both resident and non-resident depositors. *Bullock* v. *Guilford,* 59 Vt. 516; *Liverpool etc. Ins. Co.* v. *Board of Assessors,* 51 La. Ann. 1028; Joyslin Estate, 76 Vt. 88; *St. Albans* v. *National Car Co.,* 57 Vt. 68; State Tax of Foreign Held Bonds, 15 Wall. 300; *Murray* v. *Charleston,* 96 U. S. 432; 1 Cooley on Taxation, pp. 25, 27, 651; *Planter's Bank* v. *Union Bank,* 16 Wall. 483; *Provident Inst.* v. *Mass.,* 6 Wall. 611.

The defendant was without power to enter into such stipulation and its act in so doing is *ultra vires* and not enforceable. *McCormick* v. *Bank,* 165 U. S. 538; *Bowen* v. *Needles National Bank,* 94 Fed. 925; *Metropolitan Stock Exchange* v. *National Bank,*

76 Vt. 303; *First National Bank* v. *National Exchange Bank,* 92 U. S. 122; *Concord First National Bank* v. *Hawkins,* 174 U. S. 364; *Central Transportation Co.* v. *Pullman Car Co.,* 139 U. S. 24; *Commercial National Bank,* v. *Pirie,* 82 Fed. 799; *Norton* v. *Bank,* 61 N. H. 589; *Home Ins. Co.* v. *Morse,* 87 U. S. 445; *Baron* v. *Burnside,* 121 U. S. 186; *Doyle* v. *Continental Ins. Co.,* 94 U. S. 535; *Southern Pacific Co.* v. *Denton,* 146 U. S. 202; *First National Bank of Atlanta* v. *Converse,* 200 U. S. 425; *Merchants National Bank of Cincinnati* v. *Werhman,* 202 U. S. 295.

The act is in violation of the fifth and fourteenth amendments to the Constitution of the United States in that the tax is not uniform, causes discrimination and creates inequality in the burdens of taxation; takes the property of the defendant and of its depositors, citizens of Vermont and of other states, without due process of law; denies to a class of citizens the equal protection of the law. *Hayes* v. *Missouri,* 120 U. S. 68; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540; *Reagan* v. *Farmers' Loan & Trust Co.,* 154 U. S. 362; *Cotting* v. *Kansas City Stock Yard Co.,* 183 U. S. 79; *Vanzant* v. *Waddel,* 2 Yerg. (Tenn.) 260; *State* v. *Goodwill,* 33 W. Va. 179; *State* v. *Mitchell,* 97 Me. 66; *McKinster* v. *Sager,* 163 Ind. 671; *Bell's Gap Railroad Co.* v. *Penn.,* 134 U. S. 232; 2 Pepper & Lewis, Digest, 4458-4459; *Barbier* v. *Connelly,* 113 U. S. 27; *Nicol* v. *Ames,* 173 U. S. 509; *Gulf Colorado etc. Railway* v. *Ellis,* 165 U. S. 150; *Magoun* v. *Ill. Trust & Savings Bank,* 170 U. S. 283; *In re State Tax on Foreign Held Bonds,* 15 Wall. 300; *Murray* v. *Charleston,* 96 U. S. 432; *Jones* v. *Winthrop Sav. Bank,* 66 Me. 242; *State* v. *Hoyt,* 71 Vt. 59.

The act is a violation of art. 9 of the Constitution of this State. *Hickok's Estate,* 78 Vt. 261; *Bartlett* v. *Wilson,* 59 Vt. 23.

The act is invalid because the bank cannot recoup the whole tax it pays, as the average deposit on which it is required to pay the tax includes deposits that have been withdrawn before the amount became due under the stipulation. Gray's Lim. of Taxing Power, §801 a; 1 Cooley on Taxation, 3rd Ed., p. 717, note 1; *Farmers &. Traders Bank* v. *Hoffman,* 93 Iowa 119; *New Orleans* v. *Houston,* 119 U. S. 265, 30 L. Ed., 411; *Boston* v. *Beal,* 51 Fed. 306; *Stapleton* v. *Taggart,* 91 Fed. 93; *Aberdeen Bank* v. *Chehalis County,* 166 U. S. 440.

*Clarke C. Fitts* and *Hale K. Darling* for the plaintiff.

That some moneyed capital in the state is exempt from taxation will not prevent a state from imposing a tax on National bank shares. *Hepburn* v. *Carlisle School Directors,* 23 Wall. 480, 23 L. Ed. 112; *Adams* v. *Nashville,* 95 U. S. 19, 24 L. Ed. 369; *Talbot* v. *Silver Bow County,* 139 U. S. 438; *McClellan* v. *Chipman,* 164 U. S. 347.

The tax in question is not invalid because of inequality, discrimination, or other illegality. The State has the right to search out new classes as subject matter of taxation, and to devise new methods. *People ex rel. Eisman,* 185 N. Y. 285; *Savings Society* v. *Multnomah Co.,* 169 U. S. 421; *Metropolitan St. R. Co.* v. *New York,* 199 U. S. 1. Perfect equality cannot be attained. Approximation is all that can be had. *Com.* v. *Savings Bank,* 5 Allen 428; *Allen* v. *Drew,* 44 Vt. 174; *Tappan* v. *Merchants Nat. Bank,* 19 Wall. 490; *First Nat. Bank* v. *Chapman,* 173 U. S. 205.

The fourteenth amendment of the Federal Constitution was never intended wholly to forbid class legislation, and discriminations are not thereby prohibited provided they are reasonable and the law applies alike to all the particular class affected. *Soon Hing* v. *Crowley,* 113 U. S. 703; *Powell* v. *Pennsylvania,* 127 U. S. 678; *Moore* v. *Missouri,* 159 U. S. 673; *Atchison R. Co.* v. *Matthews,* 174 U. S. 96; *Giozza* v. *Tiernan,* 148 U. S. 657; *Pacific Express Co.* v. *Seibert,* 142 U. S. 339; *Magoun* v. *Ill. Trust & Sav. Bank,* 170 U. S. 283.

The tax imposed on the savings institutions of the State under P. S. 744, 745, is a franchise tax, *State* v. *Franklin Co. Sav. Bank,* 74 Vt. 246; *State* v. *Bradford Sav. Bank,* 71 Vt. 234; while the tax here in question is a property tax.

A party cannot be heard to question the validity of a law unless his rights are in some way impaired thereby. *State* v. *Roberts,* 74 N. H. 476; *State* v. *Currans,* 111 Wis. 431, 56 L. R. A. 252; *Kansas City* v. *Union etc. Co.,* 59 Kan. 427; 52 L. R. A. 321; *Brown* v. *Ohio Val. R. Co.,* 79 Fed. 176; and here the depositors are not parties, and make no complaint.

The only method whereby the State can enforce collection of this tax from the depositors directly is by suit, hence an op-

portunity for hearing before assessment is not required. *Winona
etc. Land Co.* v. *Minnesota,* 159 U. S. 526; *Cincinnati etc. R. Co.*
v. *Kentucky,* 115 U. S. 321; *Hagar* v. *Reclamation Dist.* 111
U. S. 701.

The State might have compelled the bank to pay this
tax in the first instance. *National Bank* v. *Com.,* 9 Wall. 353,
19 L. Ed. 701; *Lionberger* v. *Rowse,* 9 Wall. 468; *Merchants' etc.
Bank* v. *Pennsylvania,* 167 U. S. 461; *Waite* v. *Dowley,* 94 U. S.
527; *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232. And the
State has the power to make the bank its agent in the collection
of this tax. *Haight* v. *R. R. Co.,* 6 Wall. 15; *R. R. Co.* v. *Jackson,*
7 Wall 262; *Carstairs* v. *Cochran,* 193 U. S. 10; *St. Albans* v.
*National Car Co.,* 57 Vt. 68.

The stipulation of the bank was within the exercise of its
necessary incidental powers and not *ultra vires. Shinkle* v.
*Ripley First Nat. Bank,* 22 Ohio St. 516; *Charlotte First Nat.
Bank* v. *Nat. Exch. Bank,* 92 U. S. 127; *Western Nat. Bank*
v. *Armstrong,* 152 U. S. 346; *Nebraska* v. *Orleans First Nat.
Bank,* 88 Fed. 947; *Pattison* v. *Syracuse Nat. Bank,* 80 N. Y.
82; *Sykes* v. *Canton Nat. Bank,* 2 S. D. 242; *Interstate Nat. Bank*
v. *Ferguson,* 48 Kan. 732; *Nat. Bank* v. *Graham,* 100 U. S. 699;
*First National Bank* v. *Nat. Exchange Bank,* 92 U. S. 122; *Lull*
v. *Anamosa Nat. Bank,* 110 Iowa 537; *Metropolitan Stock Ech.*
v. *Lyndonville Nat. Bank,* 76 Vt. 303; *Central Transp. Co.* v.
*Pullman Car Co.,* 139 U. S. 24.

MUNSON, J. This case involves the construction and
validity of certain provisions of chapter 37 of the Public Statutes,
containing sections 804-820, and relating to the taxation of
National bank deposits.

Section 804 provides in substance that every person having
an interest bearing deposit in a National bank in this State
on the first day of April and October shall, within twenty days
thereafter, report the amount thereof and the name of such bank
to the commissioner of state taxes. Section 805, in connection
with 806, provides that every resident of the State having such
a deposit shall annually report to the listers of the town wherein
he resides, in his tax inventory, the names of all banks located
in this State wherein he then has or has had any such deposits

during the year next preceding the first day of April, and the amount of such deposits.   Section 807 provides that the listers in every town shall, on or before the tenth day of May, report to the commissioner of state taxes the names of all persons whose inventories show that they had interest bearing deposits in a National bank in this State on the first day of the preceding. April, together with the amount of each individual deposit, and the name of the bank holding it.     Section 808 provides that such reports shall be kept on file for three years after the taxes based on them become due,   and be subject to the inspection of certain officials, one of whom is the State's attorney of the county wherein such   bank has its principal place of business, or wherein said depositor, if a resident of this State, has his domicile.   Section 809 provides that every person having such a deposit in a National bank in this State shall semi-annually pay a tax to the State, and assesses such tax at the rate of seven-twentieths of one per cent semi-annually upon the amount of the deposit held by such bank on the first day of April and October, and requires that such taxes be paid to the State treasurer semi-annually  on or before the last day of May and November. Section 810 provides that no other tax shall be assessed on such deposits, nor against the depositors on account thereof.   Section 811 provides that a depositor who wilfully fails to make such returns or pay such taxes shall forfeit ten per cent of such deposit to the use of the State for each month's delay in filing such return, and that such tax and forfeiture may be recovered in an action on the statute.

It is further provided by sections 814-816 that if a  National bank in this State so elects it may pay to the State the taxes provided for as above, and that it shall be lawful for such bank to deduct the taxes so paid from the interest or deposits then or thereafter held by it belonging to the person from whom such tax became due; that if a bank elects to pay such taxes to the State  and to make certain returns elsewhere  provided for, it shall, semi-annually, on or before the first day of April and October, file with the commissioner of state taxes a stipulation setting forth such fact, and that the commissioner shall thereupon issue to the bank a certificate in duplicate showing such filing; that a bank filing such stipulation shall thereupon become liable

to make such returns, and liable to the State for such tax for the six months named in such stipulation, and that no depositor in such bank shall be required to make the returns before specified for such six months period. Section 817 provides that "Every bank filing such stipulation shall thereupon become liable to the State for the amount of such tax of seven-twentieths of one per cent of the average amount of such deposits held by such bank during the six months beginning with the first day of April and October respectively, for which such stipulation was filed."

The returns to be made by a bank, in case it elects to pay such taxes, are specified in section 818, which provides that if a bank files such a stipulation on or before the first day of April, it shall, on or before the thirty-first day of the following October, file with the State treasurer and the commissioner of state taxes a return showing the average amount of such deposits for the six months ending on the thirtieth day of September in that year, and shall pay to the State treasurer the amount of such semi-annual tax; and that if a bank files a like stipulation on or before the first day of October, it shall file with said officers, on or before the thirtieth day of the following April, a return showing the average amount of such deposits for the six months ending with the thirty-first day of March next preceding the making of such return, and shall pay the tax for such semi-annual period.

The State sues on a stipulation filed by the defendant under the foregoing provisions on the first day of October, 1908. By this stipulation the defendant agreed with the State that on or before the thirtieth day of April, 1909, it would make sworn returns to the State treasurer and the commissioner of state taxes showing the average amount of all deposits held by it during the six months beginning with the first day of October, 1908, whereon the rate of interest paid or allowed by it to the depositors thereof exceeded two per cent per annum, and that on or before the thirtieth day of April, 1909, it would pay to the State treasurer a tax of seven-twentieths of one per cent of the average amount of all such deposits. This agreement was expressed to be in consideration of and for the purpose of carrying out the statutory provisions which relieve the depositor from

12

the making of returns and the payment of a tax in case such a stipulation is filed.

The case is presented by an agreed statement from which the following facts appear. For several years the defendant has allowed certain depositors interest at a rate exceeding two per cent per annum, payable on the first day of January and July, for such calendar months as their deposits have remained in the bank prior to the days named; but no interest is paid on such deposits unless they are in the bank on January first or July first. The bank has other depositors who receive certificates on which interest is paid at the rate of three per cent per annum for each calendar month during which the deposit remains in the bank. Certain deposits were made subsequent to July 1, 1908, and withdrawn prior to January 1, 1909, and others were made subsequent to January 1, 1909, and withdrawn prior to July 1, 1909, some being withdrawn before and some after April first; and no interest was paid on any of these deposits. Some deposits were made after October 1, 1908, and withdrawn prior to April 1, 1909, part of which were in the bank January 1, 1909, and drew interest at the aforesaid rate. There were also deposits in the bank on October 1, 1908, whereon interest at said rate was then allowed, which were withdrawn prior to March 31, 1909. Some persons who had deposits on October 1, 1908, and some who became depositors after that date, ceased to be depositors before March 31, 1909. Part of the interest-bearing deposits in the bank on April 1, 1908, October 1, 1908, and April 1, 1909, were deposited by persons residing without this State. The aggregate of interest-bearing deposits at the last named date was $28,885.01 in excess of the average for the semi-annual period ending March 31, 1909. The defendant has made payments under previous stipulations like the one in question, and in so doing it has treated all these deposits as deposits upon which it would pay or allow interest at the aforesaid rates, notwithstanding some of them were held and withdrawn as above stated. Under this method of allowing interest on deposits it is impossible for the defendant to determine at the time it is required to make its sworn returns for the periods ending September thirtieth and March thirty-first semi-annually, on what deposits it will

pay or allow interest exceeding two per cent per annum from the first day of January next preceding the thirty-first day of March, and from the first day of July next preceding the thirtieth day of September.

A few obvious considerations present themselves at the threshold of our inquiry. The suit is upon the bank's agreement to pay the taxes of its depositors, and not for the collection of a tax as such. The claim is not contested by the persons whose property is chargeable with the amount to be paid, but by the bank which has assumed the payment under statutory authorization. Those upon whom the tax was imposed have been omitted from the tax list because of this undertaking of their depositary. The substitution of the bank for the depositor as the one responsible for the payment of the tax, was effected by its own act.

The arguments of counsel are based in part upon certain undisputed propositions. The taxing power of the State extends to all persons and property within its jurisdiction not protected therefrom by Federal supremacy. *Kirtland* v. *Hotchkiss,* 100 U. S. 491, 25 L. Ed. 558; *Catlin* v. *Hull,* 21 Vt. 152. National banks are instrumentalities of the Federal government, and as such are necessarily under the paramount authority of the United States. *Davis* v. *Elmira Savings Bank,* 161 U. S. 275, 40 L. Ed. 700, 16 Sup. Ct. 502; *Hawley* v. *Hurd,* 72 Vt. 122, 47 Atl. 401, 52 L. R. A. 195, 82 Am. St. Rep. 922. There can be no state taxation of a National bank without the consent of Congress. *Mercantile etc. Bank* v. *City of New York,* 121 U. S. 138, 30 L. Ed. 895, 7 Sup. Ct. 826. The only taxation permitted is upon the real estate of the bank and its shares of stock as the property of its stockholders, and this does not authorize a taxation of the bank's franchise in lieu of the taxation of shares. *Owensboro National Bank* v. *Owensboro,* 173 U. S. 664, 43 L. Ed. 850, 19 Sup. Ct. 537. A franchise tax is a tax upon the privilege of doing business under corporate organization; and the tax of seven-tenths of one per cent upon the average amount of deposits, imposed upon the savings institutions of this State by sections 744 and 745 of the Public Statutes, is a franchise tax. *State* v. *Bradford Savings Bank* 71 Vt. 234, 44 Atl. 349; *State* v. *Franklin County Savings Bank,*

74 Vt. 246, 52 Atl. 1069.   The provision of the Federal Consti-
tution which secures to all the equal proptection of the laws
does not prevent a classification of property for the purposes
of taxation, but it requires that the classification be based on
some distinction which bears a just relation to the purpose of
the enactment.   *Magoun* v. *Illinois, etc. Bank,* 170 U. S. 283,
42 L. Ed. 1037, 18 Sup. Ct. 594; *State* v. *Hoyt,* 71 Vt. 59, 42 Atl.
973.

The first subject of inquiry is whether there was a valid
consideration for the agreement sued upon, and this involves
an inquiry as to the validity of the tax left uncollected because
of the agreement; and, in view of the acknowledged limit of
taxation as against the bank, the first point for consideration
is the status of the deposit as regards ownership, and the nature
of the property taxed under the name of "deposits."

Money deposited in a bank without special arrangement
becomes the property of the bank, and properly available for
use in its business; and the depositor becomes a creditor of the
bank to the amount of the deposit. Bouv. Dict. Tit. Deposit;
3 Ency. Law 827; Note 19 Am. Dec. 418; 1 Morse on Banking,
§289; *State* v *Franklin County Savings Bank,* 74 Vt. 246, 52
Atl. 1069.   This doctrine of the law of banking was well settled
when National banks were created and authorized to receive
deposits.   *Bank of Kentucky* v. *Wister,* 2 Peters 318, 7 L. Ed.
437.   *Foley* v. *Hill,* 2 H. L. Cas. 28; *Matter of Franklin Bank,*
1 Paige (N. Y.) 249, 19 Am. Dec. 413; *Northern Liberties Bank*
v. *Jones,* 42 Pa. St. 536; *Coffin* v. *Anderson,* 4 Black. 395.   The
application of the doctrine to the business of National banks
was authoritatively recognized early in their history.   *Marine
Bank* v. *Fulton Bank,* 2 Wall. 252, 17 L. Ed. 785; *Thompson* v.
*Riggs,* 5 Wall. 663, 18 L. Ed. 704.   It was said in *National
Bank* v. *Millard,* 10 Wall. 152, 19 L. Ed. 897, in view of the cases
last cited, that it was no longer open to question in that court
that the relation between the bank and an ordinary depositor
was that of debtor and creditor.   This conclusion has since
remained undisturbed.   *Manhattan Co.* v. *Blake,* 148 U. S.
412, 37 L. Ed. 504, 13 Sup. Ct. 640; *National Bank* v. *Massey,*
192 U. S. 138, 48 L. Ed. 380, 24 Sup. Ct. 199.

The defendant argues that by the terms of the statute the

tax is upon the deposits, and that inasmuch as the deposits are the property of the bank, and properly used in its business, the tax is upon the property or business of the bank. But the language of the statute does not require this conclusion. The transaction which makes the money the property of the bank gives the depositor a credit of equal amount, and the term "deposit" may be used to indicate the money deposited or the credit which the depositor receives for it. The last must be taken to be the meaning here, for the statute lays the tax upon the depositor in so many words. The credit arising from the transaction is properly taxable to the depositor under our statute, unless the debtor's status as a National bank secures its exemption.

The deposits of a bank increase its capacity for doing business, but they are not capital stock in any view. *Society for Savings* v. *Coite,* 6 Wall. 561, 18 L. Ed. 897. The capital stock of National banks is taxed to the individual holders by permission of Congress, and could not be taxed without such permission. *State of New York* v. *Weaver,* 100 U. S. 539, 25 L. Ed. 705. But it does not follow that Congressional authority is needed to enable the state to tax National bank deposits to the depositors. There is no similarity between capital stock and deposits. The capital stock of a bank is the sum on which it is authorized to do business and the permanent basis of its credit. A general deposit is a loan to the bank, and the right of the depositor a mere chose in action. *Scammon* v. *Kimball,* 92 U. S. 362, 23 L. Ed. 483; *Davis* v. *Elmira Savings Bank,* 161 U. S. 275, 40 L. Ed. 700; *National Bank* v. *Millard,* 10 Wall. 152, 19 L. Ed. 897. It is true that deposits become a part of the working capital of the bank, and that any taxation of the depositors may have a tendency to lessen this resource; but it can hardly be supposed that the efficiency of National banks as instrumentalities of the Federal government will be endangered by any taxation of depositors which is free from unjust discrimination. If the defendant's contention is correct, all the uninvested capital of the State can escape taxation by seeking a refuge in National banks. We find nothing in the utterances of the Federal Supreme Court to indicate that this curtailment of the taxing power of the state was intended by Congress.

On the contrary, it has been said that implied prohibitions of taxation must not be extended so far as to destroy the necessary powers of the states or prevent their efficient exercise; that in regulating the taxation of National bank shares it was not the intention of Congress to interfere with the taxing power of the state further than was necessary to protect the banks from carrying more than their share of the public burdens; that agencies of the Federal government are exempt from state legislation only so far as that legislation impairs their efficiency in performing the functions of their agency. *Union Pacific R. Co.* v. *Peniston*, 18 Wall. 5, 21 L. Ed. 787; *State of New York* v. *Weaver*, 100 U. S. 539, 25 L. Ed. 705; *First National Bank* v. *Kentucky*, 9 Wall. 353, 19 L. Ed. 701; *Western Union Telegraph Co.* v. *Attorney General*, 125 U. S. 530, 31 L. Ed. 790, 8 Sup. Ct. 961. In the case of an ordinary loan the property transferred to the borrower and the debt accruing to the lender are considered distinct and separate interests, and the state can impose a tax upon each. *People* v. *Worthington*, 21 Ill. 171, 74 Am. Dec. 86. See *Tennessee* v. *Whitworth*, 117 U. S. 129, 29 L. Ed. 830, 6 Sup. Ct. 645. The failure to tax one would have no bearing upon the right to tax the other. It would seem from this that a borrowing bank can be protected from taxation by the doctrine of Federal supremacy, without impairing the right of the state to tax its creditor. So we conclude that there is nothing in the relation of the bank to the Federal government that protects the depositors from taxation.

But the defendant insists that if the tax is against the depositors instead of upon the property or business of the bank it is invalid for want of a legal assessment. The word "assessment" ordinarily implies an official listing of the persons and property to be taxed, and a valuation of the property of each person as a basis of apportionment. This is usually done by officials specially appointed for the purpose. But in the case of taxes laid upon solvent securities, certificates of deposit, mortgages, undivided profits, or the like, the nominal or face value of which is identical with the actual value, the assessment may be made by the Legislature without the intervention of assessing officers. 27 Ency. Law 663. Thus under an act of Congress which imposed a tax of five per cent on

the declared dividends, undistributed earnings, and interest paid on the mortgage bonds, of certain corporations, and made provision for the making of certain returns by the corporation, it was held that no other assessment than that made by the statute was necessary to determine the extent of the liability; that when the facts were established the law made the assessment independent of the action of any officer; and that in a suit to recover the tax the controlling question was not what had been assessed, but what was due by law.  *Dollar Savings Bank* v. *United States,* 19 Wall. 227, 22 L. Ed. 80; *King* v. *United States,* 99 U. S. 229, 25 L. Ed. 373; *United States* v. *Erie Railway Co.,* 107 U. S. 1, 27 L. Ed. 385, 2 Sup. Ct. 83; *United States* v. *Philadelphia & Reading R. R. Co.,* 123 U. S. 113, 31 L. Ed. 138, 8 Sup. Ct. 77. It is evident from these cases that there are some classes of property as to which a legislative assessment is sufficient without a special official valuation.

But the defendant says that sections 804 to 808 in fact provide for a further assessment, and that the things required have not been done, and that consequently no assessment has been made.  But the only thing we are concerned with at this stage of our inquiry is whether the statute is a sufficient provision for the making of a lawful assessment.  A fair statement of the question would seem to be this:  If a resident depositor had made the required returns to the commissioner and the listers, and the listers had made their return to the commissioner, could the depositor have avoided payment of the tax on the ground that no official judgment had been passed on the value of his deposit?  It is obvious that the only possible question affecting valuation would be one as to the solvency of the bank.  In the taxation of cash there is no distinction between actual value and face value.  A credit of a certain amount payable on demand in cash values itself, if the payer is solvent.  Under a general law the value of all income bearing securities for taxing purposes is determined by their amount. A taxpayer can not reduce his list by valuing his invested funds according to the rate of interest they bear.  This statute relates solely to interest bearing deposits, and income producing funds are presumably good.  Certainly a National bank open for

business and paying interest regularly on its deposits may be presumed to be a solvent debtor. A taxpayer holding a note on which interest is regularly paid cannot properly return it as due from an insolvent debtor on the ground that the debtor's financial condition is not such as to place him beyond the reach of disaster. No more can a depositor in a bank object to an assessment of his credit at its full amount because of the possibility that the bank may prove to be insolvent. In view of these considerations we think the assessment provided by the statute is not invalid because of the failure to provide for an official valuation.

In reaching this conclusion we are not unmindful of the decision in *Com.* v. *Lehigh Valley R. R. Co.*, 104 Pa. St. 89,— a case specially relied upon by the defendant. In that case the statute imposed a tax on the value of corporate bonds held by residents of the state, to be paid into the state treasury by the corporation, and provided that the corporation should report to the auditor-general the amount of such indebtedness, and that the auditor-general should thereupon file an account of the amount due. The state claimed that this proceeding was a sufficient assessment, but the court considered that the tax was upon the actual value instead of the nominal or par value, and that a legal ascertainment of that value was essential to the assessment of a valid tax; and considered further that upon no principle of law could the corporation's return of the amount of its indebtedness be held an assessment binding on its creditors. There the sum returned was the amount of the bonded debt, while the tax was on the actual value of the bonds; and the taxpayer had no part in the procedure by which the amount was determined, but was taxed on the basis of a return made by his debtor. Here the tax is upon the amount of the credit, and is based on a return of it made by the taxpayer himself.

The defendant claims further that the imposition of the tax is invalid because the statute conflicts in several respects with the provision of the Federal Constitution which secures to all the equal protection of the laws. Some of its points are presented in connection with a review of *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232, 33 L. Ed. 892, 10 Sup. Ct. 533,

which aims to distinguish that case from the one under consideration; and this makes a statement of the case desirable at this point. The statute of Pennsylvania imposed a tax of three mills on the dollar of the nominal or par value of bonds and other securities issued by corporations, and a ⸱like tax on the actual value of all other moneyed securities. The treasurer of a corporation was required to make a return of its loans, and on his failure to do so an account against the corporation, charging it with the tax supposed to be due, was filed by the auditor-general. If this account was approved by the state treasurer, it was served on the corporation, which then became liable to pay the tax within a specified time unless cause was shown to the contrary. If dissatisfied with the auditor's account, the corporation, with all others interested, could take the case into court for trial. It appeared on appeal that the nominal or face value of the company's bonds varied from the market value on account⸱of the different rates of interest. It was objected that the tax was illegal because the nominal value of the bonds was not their real value; because the owners of the bonds had no notice, and no opportunity to be heard; because the company was taxed for property it did not own; and because all other property in the state was taxed at its actual value and on notice to the owners. The Court held that the making of the assessment upon the nominal or face value of the bonds instead of upon their actual value was not a violation of the Fourteenth Amendment. As regards the want of notice to the owners of the bonds the Court said: "What notice could they have which the law does not give them? They know that their bonds are to be assessed at their face value, and that a tax of three mills on the dollar of that value will be imposed; and that they will only be required to pay this tax when and as they receive the interest. If the state may assess the tax upon the face value of the bonds, notice *in pais* is not necessary." Regarding the claim that the corporation was taxed for property it did not own, the Court said: "The objection is not true in point of fact. The corporation, as the debtor of its bondholders, holding money in its hands for their use, namely, the interest to be paid, is merely required to pay to the commonwealth out of this fund the proper tax due on the security.

The tax is on the bondholder, not on the corporation. This plan is adopted as a matter of convenience, and as a secure method of collecting the tax."

The defendant claims that the *Bell's Gap* case, while seemingly an authority for the State, is in fact an authority against it, and specifies a number of particulars in which the cases are considered distinguishable. Some of the points made are based upon the theory that the tax is upon the deposit as such, and our holding to the contrary makes a consideration of these unnecessary. It is said that the tax in that case was upon the nominal instead of the actual value, and so required nothing more than the return of the treasurer to complete the assessment, while here the tax is upon the actual value, the determination of which requires an official assessment, and that because of this difference notice *in pais* was unnecessary in that case, but essential in this. These matters are sufficiently covered by what has been said on the subject of valuation. Other arguments made in connection with the case will come within the further discussion.

It is said that the act in question discriminates against depositors in National banks by singling them out from all other taxpayers, and requiring them to pay a State tax upon a certain class of debts due them; that this tax is at a different rate, and required to be paid at different times and by different methods from what is required of other taxpayers, and of them as to their other property; that they alone of all taxpayers are required to make returns disclosing the banks where they have deposits and the amount of their deposits; and that the act discriminates against depositors in National banks whose deposits are not on interest in that it leaves them subject to taxation at the full local rate. We think the act is valid as against these objections. The Federal Constitution does not confine the State to one system of taxation,and different systems require different methods to adjust them to the general purpose of the law. *Michigan Central R. R. Co.* v. *Powers*, 201 U. S. 245, 50 L. Ed. 744, 26 Sup. Ct. 459; *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232, 33 L. Ed. 892, 10 Sup. Ct. 533. Diversity of taxation, both with respect to the amount imposed and the species of property selected for taxation or exemption, is not inconsistent

with a perfect uniformity and equality of taxation in the proper sense of the terms. *Pacific Express Co.* v. *Seibert,* 142 U. S. 339, 35 L. Ed. 1035, 12 Sup. Ct. 250. Different systems, adjusted with reference to the valuation of different kinds of property, may be adopted; and the method of collection may be varied to suit the necessities of the case. *Tappan* v. *Merchants National Bank,* 19 Wall. 490, 22 L. Ed. 189. Equality of operation does not mean indiscriminate operation on persons merely as such, but on persons according to their relation. *Magoun* v. *Illinois etc. Bank,* 170 U. S. 283, 42 L. Ed. 1037, 18 Sup. Ct. 594.

It is said that the effect of the act is to withdraw from local taxation personal property of great value, and that this results in a discrimination against taxpayers having choses in action other than National bank deposits, by diminishing the grand list and thus raising the rate of local taxation, the average of which is already more than seven-tenths of one per cent per annum. This is clearly within the power of the State, unless prohibited by its own constitution. There is nothing in the Federal Constitution which requires that state taxation be equal, uniform or just. *Davidson* v. *New Orleans,* 96 U. S. 97, 24 L. Ed. 616; *Memphis Gas Light Co.* v. *Taxing District,* 109 U. S. 398, 27 L. Ed. 976, 3 Sup. Ct. 205; *Home Ins. Co.* v. *New York,* 134 U. S. 594, 33 L. Ed. 1025, 10 Sup. Ct. 593; *Giozza* v. *Tiernan,* 148 U. S. 657, 37 L. Ed. 599, 13 Sup. Ct. 721. It is said in *Merchants etc. Bank* v. *Pennsylvania,* 167 U. S. 461, 42 L. Ed. 236, 17 Sup. Ct. 829, and again in *Travelers Ins. Co.* v. *Connecticut,* 185 U. S. 364, 46 L. Ed. 949, 22 Sup. Ct. 673, that the "whole argument of a right under the Federal Constitution to challenge a tax law on the ground of inequality in the burdens resulting from the operation of the law is put at rest by the decision in *Bell's Gap R. R. Co.* v. *Pennsylvania.*"

It is claimed further that the act discriminates between depositors in National banks and taxpayers under the general law by excluding the former from the privilege of deducting their indebtedness; and that it discriminates against National banks in that all their deposits bearing interest exceeding two per cent are taxed to the depositors, while of deposits in savings institutions only the amount exceeding $2,000 is so taxed. All that is required by the Federal Constitution is that one class

be not deprived of a privilege enjoyed by the other under the same conditions. *Soon Hing* v. *Crowley,* 113 U. S. 703, 28 L. Ed. 1145, 5 Sup. Ct. 730. Depositors in National banks and taxpayers under the general law are not in the same situation. One class pays a single tax to the State at a fixed rate which calls for an amount less than the average of taxes under the general law, while the other class is subject to the greater burden and uncertain demands of local taxation. Those more heavily taxed on an average under the general law may well be allowed a reduction denied to those who take advantage of the opportunity afforded by the special act. Nor do we think the discrimination between the two classes of banks as regards the $2,000 limit is without reasonable ground. National banks and savings institutions differ in their purpose, in the scope of their business, and in the modes of operation permitted to them. The savings institution is primarily intended to encourage saving by people of small means, and a deposit in any one bank to the amount of $2,000 is exempt to the depositor. But this exemption is only partial. The $2,000 goes to enhance the average amount of deposits on which the savings bank pays a tax to the State. A taxpayer can secure exemption from general taxation for an unlimited amount by placing it in any National bank, and the bank will pay no tax on the deposit however large. The fact that the State cannot require it to do so does not deprive the distinction of its legal effect.

It is well understood that a provision not objectionable on its face may be adjudged unconstitutional because of its effect in operation, and that in some cases the intent of the Legislature will be considered in determining the question. *Yick Wo* v. *Hopkins,* 118 U. S. 356, 30 L. Ed. 220, 6 Sup. Ct. 1064; *Dobbins* v. *Los Angeles,* 195 U. S. 223, 49 L. Ed. 169, 25 Sup. Ct. 18. Among the cases cited by the defendant in discussing the question of unlawful discrimination is *Larabee* v. *Dolley,* 175 Fed. 365. This case arose under a statute which provided for the formation of a depositors' guaranty fund by assessments received from the banks, and gave National banks the option, upon certain conditions, of becoming participants in the assessments and benefits of the fund. It was held that it was beyond the power of National banks to comply with the conditions,

and that upon the case presented the formation of such a fund for the benefit of depositors in state banks would create an unjust and unreasonable discrimination against National banks. In this case it was alleged by the complainants and admitted by demurrer that the act was intended to deprive National banks of their customers and business, and that this was the effect of the act in operation. Here there is no finding of any such intent or effect. On the contrary, the case affords indications that National banks are benefitted by the act.

The unconstitutionality of the statute is claimed on a further ground. It is said that the statute takes the property of the depositor without due process of law, in that it assesses him without notice and gives him no opportunity to defend against the tax. Property may be taken through tax proceedings without the notice required in exercising the right of eminent domain. *Hagar* v. *Reclamation District,* 111 U. S. 701, 28 L. Ed. 569, 4 Sup. Ct. 663; *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232, 33 L. Ed. 892. The proceeding is within the requirement of due process if the taxpayer has an opportunity to contest the validity or amount of the tax in proceedings had for its collection. *Winona etc. Co.* v. *Minnesota,* 159 U. S. 526, 40 L. Ed. 247, 16 Sup. Ct. 83. We think the provisions of our statute satisfy the requirement. The taxpayer's return will show a deposit credit of a given amount. The law assesses a tax of seven-twentieths of one per cent on the sum returned. A mathematical calculation determines the amount of the tax. The method of enforcing collection is by a suit in court. The proceeding requires notice, and implies a right to contest the validity of the claim. See *Lent* v. *Tillson,* 140 U. S. 316, 35 L. Ed. 419, 11 Sup. Ct. 825; *Cincinnati etc. R. R. Co.* v. *Kentucky,* 115 U. S. 321, 29 L. Ed. 414, 6 Sup. Ct. 57. Statutes sometimes, and perhaps generally, provide in terms for the making of defences; but, as said in the case last cited, "In the absence of such provisions and as a principle of general jurisprudence, it is safe to say that any defence is admissible which establishes the illegality of the proceeding resulting in the alleged assessment, whether because it is in violation of the local law which is relied on as conferring the authority * * * * or because it constitutes a denial of a right secured to the party complaining

by the Constitution of the United States."

It is said further that the operation of the statute is such that takes the property of the bank and of its depositors and of its stockholders without due process. The operation complained of can occur only through the action of the bank, and the consideration of any effect the action of the bank may have on the rights of the depositors belongs to a later branch of the discussion. The statute does not undertake to authorize a deduction from the credit on any other basis than a correct apportionment. If any loss falls upon the bank or its stockholders it is by virtue of the bank's undertaking, and any question that arises here touches the matter of *ultra vires* rather than the constitutionality of the statute.

It is claimed further that the statute is unconstitutional in that it impairs the vested rights of certain depositors under their contracts with the bank. It is said that the bank is under contract to pay one class of its depositors interest at the rate of three per cent per annum, and that the statute requires it to pay seven-tenths of one per cent to the State and permits it to pay two and three-tenths per cent to the depositor in satisfaction of its agreement. The unsoundness of this claim is apparent from several cases already cited. Speaking generally, all property within the jurisdiction of the State is held subject to its right to impose new taxes, or to increase the rate or change the method of taxation. All contracts are made with reference to the taxing power of the State, and in subordination to it. *Rutland R. R. Co.* v. *Central Vermont R. R. Co.* 63 Vt. 1, 20, 21 Atl. 262, 10 L. R. A. 562; *Murray* v. *Charleston,* 96 U. S. 432, 24 L. Ed. 760; *Cleveland etc. R. R. Co.* v. *Pennsylvania,* 15 Wall. 300, 21 L. Ed. 179; *Gilman* v. *Sheboygan,* 67 U. S. 510, 17 L. Ed. 305; *North Missouri R. R. Co.* v. *Maguire,* 20 Wall. 46, 22 L. Ed. 287. To impair the obligation of a contract, the statute must act upon the contract itself. *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 420, 578, 9 L. Ed. 773, 836. The statute under consideration acts upon the property which is the subject of the contract, and not upon the contract.

The defendant says further that the act is an unlawful interference with the business of National banks, because of the publicity required to be given to the business of the de-

positor and the bank by the prescribed returns. It is true that a state can exercise no control over a Nationa lbank, nor in any way affect its operation, except as Congress may permit. *Farmers etc. Bank* v. *Dearing,* 91 U. S. 29, 23 L. Ed. 196; *Hawley* v. *Hurd,* 72 Vt. 122, 47 Atl. 401, 52 L. R. A. 195, 82 Am. St. Rep. 922. But this doctrine protects the bank only from such legislation as tends to impair its utility as an instrumentality of the Federal government. *Waite* v. *Dowley,* 94 U. S. 527, 24 L. Ed. 181. It was held in that case that a statute of this State which required cashiers of National banks to transmit to town clerks a list of their shareholders, with the number ·of their shares, was not void. It is inconceivable that this requirement of returns from depositors for the purpose of reaching credits properly taxable to them, can in any way impair the efficiency of a National bank as an agent of the Federal government.

It is said that the statute is invalid because in conflict with the provision of the State constitution which requires from every member of society a proportional contribution towards the expenses of government. It was held in *Re Hickok's Est.,* 78 Vt. 259, 62 Atl. 724, upon an examination of this provision, that an inheritance tax is not unconstitutional. The Court considered that the clause requires "that the expenses of government shall be apportioned equally, and not merely that exactions levied upon property shall be equal," but nevertheless concluded that the "requirement of proportional contributions for the support of the government was not intended to restrict the State to methods of taxation that operate equally upon all its inhabitants, regardless of the variety and measure of the advantages derived from its protection and regulation." We think the decision of that case upon the reasoning indicated sustains the constitutionality of the special statute under consideration.

This completes our consideration of the objections urged against the first division of the statute; and we conclude that the provision made for taxing the depositors is valid, and that the State's waiver of all proceedings under it afforded a sufficient consideration for the defendant's stipulation.

It is said, however, that if the amount called for by this stipulation is collected, and the bank undertakes to recoup

itself from the deposits, the property of the depositor will be taken without due process of law because no assessment has been made against him. But the assessment provided for has not been made because of the stipulation, and if the amount of the tax is collected it will be on the defendant's undertaking, and not by way of enforcing the tax. If an assessment had been actually made, the right of the State to make the bank its agent to collect the tax would have been undoubted. *First National Bank* v. *Kentucky,* 9 Wall., 353, 19 L. Ed. 701; *Lionberger* v. *Rowee,* 9 Wall. 468, 19 L. Ed. 721; *Merchants etc. Bank* v. *Pennsylvania,* 167 U. S. 461, 42 L. Ed. 236, 17 Sup. Ct. 829.

This brings us to the consideration of the second branch of the statute and of the stipulation executed under its provisions. We take up the question of *ultra vires* independent of the question regarding non-residents, leaving that for later consideration. The agreement is in substance that the bank will make, on or before April thirtieth, sworn returns showing the average amount of deposits of the class named during the six months beginning with the first day of the previous October, and that on or before such thirtieth day of April, it will pay a tax of seven-twentieths of one per cent on said average of deposits. The use of the term "a tax" cannot be given an effect adverse to the State's claim, for the agreement proceeds to say that it is made for the purpose of carrying out the statutory provisions which relieve the depositors from making the returns and paying the tax. A National bank has such powers as are properly incident to the carrying on of the business which it is expressly authorized to undertake. *First National Bank* v. *National Exchange Bank,* 92 U. S. 122, 23 L. Ed. 679; *Western National Bank* v. *Armstrong,* 152 U. S. 346, 38 L. Ed. 470, 14 Sup. Ct. 572. A National bank is authorized to receive deposits, —in other words, to assume the relation of a debtor; and if its obligation to the depositor is a credit that can be taxed by the State the convenient and successful carrying on of its business as a bank of deposit would seem to justify the adoption of some method by which the bank can act for its depositors. If this is so, there is nothing on the face of the stipulation to show that the undertaking is *ultra vires,*—nothing independent of the operation of the agreement as shown by the facts stated.

If the duty of payment related to a tax on the shares, and was imposed instead of assumed, the case would be quite within the decisions of the Federal court. The objections arise in connection with the method adopted for determining the amount of the payment.

It appears from the facts stated that because of a constant fluctuation in the amount of the deposits, and the effect of the rules for allowing and crediting interest, the relation of an individual depositor to the total amount of deposits at any date, and to the average of deposits for any period, is constantly changing; and that it is impossible for the bank to determine at the time of making its returns on what deposits it will pay or allow interest for the semi-annual period for which it is to pay the tax.

The defendant argues that the sum stipulated to be paid is a different sum and a different thing from the tax provided for, in that the tax assessed by the statute is upon the amount of the individual deposit held on the first day of April and October, while the tax which the bank undertakes to pay is on the average amount of its deposits for the six months preceding; that it cannot be said that the State makes the bank its agent to collect the tax assessed by the statute, for the bank does not undertake to pay the tax assessed, but a substitute for that tax; that in agreeing to do this the bank undertakes to pay on sums on which it receives no interest, on sums not in the bank at the date of the assessment against the depositor, and on sums withdrawn before a return is required of it; that the situation is such that the bank will either pay a larger sum to the State than could be collected of the depositors, or the State will receive less than it would receive if payment were made by the depositors; that in making the payment stipulated for, the exact proportion will not be taken from any deposit, and that consequently the money of some depositors will be taken to complete the shares of others, or some of the money which the stockholders are entitled to by way of dividends will go for that purpose; that it is impossible for the bank to arrive at the precise amount which the statute entitles it to deduct from the depositor's account; that the bank has undertaken to pay more than it can recoup, inasmuch as the average of deposits includes de-

posits that were withdrawn before the amount became due under the stipulation; and that in these circumstances the tax becomes a tax on the bank itself, and therefore invalid.

The defendant illustrates these claims by the figures given for the six months covered by the stipulation in suit. The amount of the deposits October 1, 1908, was $569,393.75, of which $20,726.28 were withdrawn prior to April 1, 1909. Of deposits made after October 1, 1908, $7,069.24 were withdrawn before April 1, 1909, and $74,575.28 were in the bank on that day. The amount in the bank April 1, 1909, was $623,242.75. The average of deposits for the period was $578,669.19, seven-twentieths of one per cent of which is $2,025.33. It is said that the bank could not under any circumstances retain more than seven-twentieths of one per cent of any deposit; that it could not reimburse itself by deducting anything from the deposits made after October 1, 1908, because the tax against the depositor is assessed on the amount he has in the bank on that day, and that it could not reimburse itself from the deposits in the bank October 1 which were withdrawn prior to April 1, because they would be beyond the bank's control; that seven-twentieths of one per cent on the amount in the bank October 1, 1908, is $32.45 less than the amount called for by the stipulation, and that the percentage on the amount included in the total of October 1, 1908, which was withdrawn before April 1, is $72.19, making a total of $104.64 to be satisfied from the resources of the bank.

The defendant's brief proceeds upon the theory, advanced at various stages of the argument, that the sections which lay a tax upon the individual depositors were never intended to become operative, but are merely a device through which the State seeks to tax indirectly a class of banks which it cannot tax directly; that the situation in which the statute places National banks with reference to their depositors and other banks is such that they are compelled to avail themselves of the privilege of paying the taxes of their depositors in order to save their business; that the right conferred by the statute to deduct the taxes "from the interest or deposits then or thereafter held by it belonging to the person from whom the tax became due" is of no value, because it cannot determine the

exact amount chargeable to a particular deposit and has no right to deduct more than the exact amount; and that a payment which is to be arrived at by taking an average of the deposits for the tax period, and which cannot be apportioned to the individual depositors, is in essence and effect a tax upon the business of the bank.

It is easily conceivable that the provisions laying a tax on the depositors were framed and enacted in the full expectation that the payment of the tax would be otherwise provided for. The fact, if it be a fact, has no bearing on the validity of the tax or the power of the corporation regarding it. In considering the claim made as to the coercive effect of the statute, regard must be had to the conditions which existed before the statute was enacted, and which would exist now without the statute. The State has had for many years a system by which deposits in savings banks, savings institutions and trust companies are taxed against the corporation, and the depositors relieved from taxation on their deposits to a certain amount, while other claims against solvent debtors, including deposits in banks other than those above enumerated, are subject to general taxation. It seems probable that the interest of the State to encourage and facilitate the appearance in larger volume of a class of property that easily escapes taxation, and a desire on the part of National banks to share in the benefits accruing to the State savings institutions from the operation of this special law, combined to produce the legislation in question. If an apportionment of the stipulated sum among the individual depositors was required, the defendant's argument upon the subject of apportionment would be important; for the depositors have not consented to an apportionment, and there is no principle of taxation by which the property of one person, even of a trifling amount, can be taken to apply on the tax of another. But no deduction under the statutory permission has been made or attempted, and the depositors are not the party complaining. The fluctuations attending the business of carrying deposits, the problems that would be presented by an attempt at apportionment, and the probable inability to recoup the full amount called for by the stipulation, are not matters which have been discovered by experimenting with the

law, but matters which were well known to the bank before the stipulation was filed. Much of the defendant's argument is based upon the assumption that the credits of the depositors are to be reduced by their respective shares of the sum paid. It appears from the agreed statement that during the period covered by the stipulation, and prior thereto, the bank has published advertisements urging taxpayers to take advantage of this law, stating that the bank paid four per cent on savings accounts to any amount and all taxes, and assuring its patrons that their names were not disclosed, as payment was made on the average of deposits. It is clear from what has been said that the action of the defendant was freely and understandingly taken, without any expectation of deducting the amount paid from the sums due depositors, and therefore unaffected by the conditions attending the making of an apportionment, whatever they may be. The agreement evidently arose from the bank's ability and willingness to pay the current rate of interest on savings deposits, and also the taxes of the depositors as represented by the proposed average. It may well be supposed that if the defendant had been looking to a recoupment, and had considered a recoupment impracticable, it would not have entered into the stipulation. If banks of this class had failed to avail themselves of the option their situation would have been the same as before. No changes were made in other features of the tax law to operate as a pressure upon National banks in determining their course.

The view we have taken renders it unnecessary to give special consideration to *New Orleans* v. *Houston,* 119 U. S. 265, 30 L. Ed. 411, 7 Sup. Ct. 198, a case relied upon by the defendant. That case might have some bearing here if the statute itself made the defendant primarily liable for the taxes assessed against its depositors. Any chance the defendant has of paying at a loss results from its own agreement, and not from the taxing provisions of the statute.

The discussion has now reached a point where it will be safe to dismiss the theory of the defendant, running through all its argument, that the payment contemplated by the agreement is in reality the tax itself, and that the validity of the agreement depends upon the payment being the exact sum of

the individual taxes. The stipulation is in fact an agreement to pay an amount in lieu of the taxes, to be determined by a practicable method convenient to the bank, which will not be the exact amount of the tax for any semi-annual period, and which may favor either the bank or the State in a given instance, but which, as the business runs and on the average, will be substantially the amount required of the taxpayers. · This narrows our inquiry to the question whether the variations and contingencies incident to the method adopted are such as place the undertaking beyond the power of the corporation. The figures before given show the result of the method in the present case; but the smallness of the deficiency which falls on the bank in this instance must not be taken as a measure of the risk assumed by such a stipulation. It is conceivable that something might occur to cause the withdrawal of a large amount of the bank's deposits in a very short time. But the undertaking is assumed only for a six months period, and the per cent called for is so small that in such an event as we have supposed the drain upon the resources of the bank could not be serious. It is at most but the taking of an ordinary business risk in connection with a reasonable expectation of substantial gains. The question is whether an agreement of this nature is properly incident to the authorized business of the bank.

A corporation has no other powers than those conferred upon it by the sovereignty which creates it. The enumeration of certain powers implies the exclusion of all others not fairly incidental to those enumerated. *Central Transportation Co.* v. *Pullman Palace Car Co.*, 139 U. S. 24, 35 L. Ed. 55, 11 Sup. Ct. 478. But whatever may fairly be regarded as incidental to the objects for which the corporation is created is not to be taken as prohibited. *Green Bay etc. R. R. Co.* v. *Union Steamboat Co.*, 107 U. S. 98, 27 L. Ed. 413, 2 Sup. Ct. 221. A corporation can make no other contracts than those authorized by its charter. *Bank of Augusta* v. *Earle*, 13 Pet. 519, 10 L. Ed. 274. But an undertaking which may fairly be regarded as incidental to, or consequent upon, those things which the Legislature has authorized, ought not, unless expressly prohibited, to be held *ultra vires*. *Jacksonville etc. Co.* v. *Hooper*, 160 U. S. 514, 40 L. Ed. 515, 16 Sup. Ct. 379. Congress has

conferred upon National banks, acting through a board of directors, all such incidental powers as are necessary to carry on the business of banking by, among other things, receiving deposits; and these powers are such as are required to meet all the legitimate demands of the authorized business, and this necessarily implies the right of a bank to incur liabilities in the regular course of its business. *First National Bank* v. *National Exchange Bank*, 92 U. S. 122, 23 L. Ed. 679. These general statements must be our guide in determining whether the defendant had the power to enter into this agreement.

It is clear that the bank's agreement is not foreign to the purpose of its creation. It is a contract designed to promote the interests of the corporation in an authorized branch of its business. It is calculated to subserve the convenience of a class of depositors whose patronage is desirable, by relieving them from personal attention to the matters of return and payment. The mere fact that this is done in co-operation with the State, and under a system provided by its statutes, does not determine that the act is *ultra vires.* We cannot see that the bank's undertaking involves it in any relations with the State that are inconsistent with its position as a creation and instrumentality of the Federal government. There is nothing in the obligation assumed that amounts to a substantial burden, or subjects the resources of the bank to any considerable risk.

In this connection a further and fuller reference may be had to *Larabee* v. *Dolley,* before cited. That case was a bill in equity, brought to test the validity of a Kansas statute which provided for the creation of a "bank depositors' guaranty fund" to be raised by an assessment on the banks taking advantage of the act. One section of the act provided that any National bank might at its option participate in the assessments and benefits of the fund upon the terms and conditions applicable to state banks. But a bank could not avail itself of this option without submitting to an examination of its affairs by the state bank commissioner, making a showing to his satisfaction, and paying the expense of the examination. It will be seen also that a National bank, in taking the benefit of this act, subjected itself to assessment to create and maintain a state institution, in which state and National banks were to have a common

interest, but which was to be under state control. It might well be said in this case, as was said, that National banks were precluded by the very law of their creation from accepting the terms, conditions and obligations of the act; and that it must be conclusively presumed that the Legislature knew when it passed the act that the banks could not accept the conditions, obligation, or benefits of the act, or be bound thereby. In the case before us nothing whatever is required of the bank in connection with the exercise of its option. The return which the defendant speaks of as a visitorial requirement is not preliminary to the exercise of the option, but preliminary to the payment. There is nothing in the nature of the agreement which brings the bank making it into association with State institutions, or places any of its interests in the keeping of a State official. In view of the considerations mentioned we think it was within the power of the corporation to execute a stipulation of this character. This brings us to the consideration of the point before reserved,—the construction and effect of the statute as regards non-residents.

We have seen that the property of the depositor is not in the money deposited, but in the credit given for it. Intangible personal property has no independent situs, but follows that of its owner, and can be taxed only where the owner resides. The debts of a corporation, like those of an individual, are the property of its creditors, and can have no locality separate from the persons to whom they are due. *Cleveland etc. R. R. Co.,* v. *Pennsylvania,* 15 Wall. 300; 21 L. Ed. 179. See *St. Albans* v. *National Car Co.,* 57 Vt. 68. So far as these credits are the property of non-residents, they are without the jurisdiction of the State and beyond its taxing power; and if the statute must be held to include non-residents it is unconstitutional, at least in part.

When the constitutionality of a statute is questioned, it is the duty of the Court to adopt a construction that will bring it into harmony with the Constitution, if its language will permit. General words are not to be so construed as to give the statute an effect beyond the legislative power, and thereby render it unconstitutional. When the terms of a statute are broad enough

to include retrospective acts as well as prospective, and as applied to retrospective acts the statute would be unconstitutional, the Court will apply it to the prospective acts only. *Newland* v. *Marsh*, 19 Ill. 376.   When a statute is broad enough to cover matters without the State as well as within, and as applied to matters without the State it would be unconstitutional, the Court will restrict the application to matters within the State, —unless the statute clearly indicates a different intent.   *State* v. *Peet*, 80 Vt. 449, 68 Atl. 661, 14 L. R. A. (N. S.) 677, 130 Am. St. Rep. 998.   When a statute is susceptible of two constructions one of which supports the act and gives it effect, and the other renders it unconstitutional and void, the former will be adopted, even though the latter may be the more natural interpretation of the language used.   26 Ency. Law. 640;   *Freight Discrimination Cases*, 95 N. C. 428; 59 Am. Rep. 247.   A statute is never to be construed so as to be unconstitutional, if a reasonable construction can be placed upon it which will give to its provisions a constitutional effect.   *Ives* v. *Salisbury*, 56 Vt. 565. If there is a construction which will bring the statute into harmony with the Constitution without doing violence to the fair meaning of the words used, it is the duty of the Court to adopt it.   *Grenada County* v. *Brown*, 112 U. S. 261, 28 L. Ed. 704, 5 Sup. Ct. 125.   A statute must, if possible, be given a construction which will make it consistent with the Constitution.   *Presser* v. *Illinois*, 116 U. S. 252, 29 L. Ed. 615, 6 Sup. Ct. 580. The provisions of a revenue act, especially, ought not to be lightly or inadvertently set aside.   *Nicol* v. *Ames*, 173 U. S. 509, 43 L. Ed. 786, 19 Sup. Ct. 522.   Every presumption is to be made in favor of the constitutionality of a statute, and it is not to be adjudged unconstitutional without clear and irrefragable evidence that it infringes the paramount law.   *In re Hackett*, 53 Vt. 354.   The presumption of validity continues until the contrary is shown beyond a rational doubt.   *Union Pacific R. R. Co.* v. *United States*, 99 U. S. 700, 25 L. Ed. 496.   As was said by Chief Justice Shaw in *Wellington* v. *Petitioners*, 16 Pick. 87, 26 Am. Dec. 631;   "Courts will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light on the subject, and never declare a statute void,

unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt."

A majority of the Court think the statute should be construed as applying to resident depositors only. The statute nowhere in terms imposes a tax on non-resident depositors. The general rule requires that the phrase "every person", used in section 804, be construed as applying only to persons on whom the law may operate, unless there is something in the statute that compels a different construction. Section 808, which provides for the preservation of the reports for three years, and for their inspection by the State's attorney of the county where the depositor has his domicile if a resident of this State, does not necessarily imply a division of the depositors into two classes; for the provision relates to a period sufficiently prolonged to cover many changes of residence, and may properly be construed to mean "if the depositor continues to be domiciled in this State." The reference in section 809 to the reports provided for in section 805 tends to fortify the conclusion that the words "every person" in 809 mean the same as the words "every resident of this State" used in 805. The provision in section 810 that no other tax shall be assessed against the depositors on account of such deposits, seems somewhat inconsistent with the theory that the Legislature had in contemplation persons other than residents of this State. The provision of section 811 which imposes a penalty on delinquent depositors would hardly have been included in a system designed to operate on non-residents. In view of these considerations we construe the statute to apply to resident depositors only.

The defendant's agreement, although in terms an agreement to pay seven-twentieths of one per cent on the average amount of all the deposits, is declared to have been entered into for the purpose of carrying out the provisions of the statute and thereby relieving its depositors from the tax imposed upon them, and the scope of its undertaking is to be measured by the extent of the taxation as now determined. So the amount of the judgment will be arrived at by a computation based on the credits of resident depositors. The agreed statement provides that the required amount for the semi-annual period ending September 30, 1909, shall be included in the judgment.

*Judgment reversed and judgment for the plaintiff for $3,989.85.*

MUNSON, J. thinks the statute plainly expresses an intention to tax all the deposits regardless of the residence of the depositors, and so does not concur in the disposition made of the question last considered.